■ L & M HOUSE OF JEANS, INC., Appellant, v COMMUNICATION CONTROL SYSTEMS, INC., Respondent. — Order, Supreme Court, New York County (Bookson, J.), entered November 4, 1981, which denied plaintiff's motion to reject the referee's report and its motion for summary judgment, unanimously reversed, on the law, with costs and disbursements, the referee's report rejected, and plaintiff's motion for summary judgment granted. Plaintiff, L & M House of Jeans (L & M), a Texas corporation, contracted with defendant,

Communication Control Systems, Inc. (CCS), a New York corporation, to purchase a piece of equipment known as a Voice Stress Analyzer (VSA). Lawrence Hurwitz, L & M's chairman of the board, had seen the ad for the VSA in a magazine in an airplane on a flight originating from Texas, and subsequently also in an ad in the southeast edition of the *Wall Street Journal,* which is circulated in Texas. Since CCS had no salesmen or offices in Texas, an officer of L & M, Burson, went to New York for a demonstration, and after the demonstration he left a binder drawn on his personal account for the purchase of the VSA. Upon his return to Texas he sent a corporate check for the full purchase amount. The VSA was shipped f.o.b. New York to L & M, but subsequently a two-day training seminar was conducted by CCS in Dallas, Texas, which was attended by representatives of seven companies, including four employees of L & M. The machine apparently did not meet L & M's expectations, or CCS' representations, and a lawsuit was instituted in the Texas District Court based upon, *inter alia,* breach of warranty in violation of the consumer protection provision of the Texas Business Commercial Code. Service was effected under the Texas long-arm statute upon the Secretary of State and CCS by certified mail. A default judgment was obtained for $16,500 on November 20, 1979. Thereafter L & M served a summons on CCS in New York and moved pursuant to CPLR 3213 for an order directing the entry of judgment based on the Texas default judgment. CCS opposed the motion on the ground that at no time prior to the judgment was it authorized to do business in Texas, nor did it possess any assets, employ any salesmen or solicit business in Texas. It also denied thay any contract was entered into in Texas, pointing out that when L & M first contacted it to look at the VSA, it refused to demonstrate the VSA in Texas, and that L & M's officer came to New York, where the order was placed. L & M replied that Burson had first called CCS on a toll-free number listed in one of its advertisements, that as part of the purchase price it was to receive training on the VSA, and that CCS informed Burson that he had just missed a training seminar in Houston. At the time Burson ordered the VSA he was given the names of other Texas companies which had purchased the VSA, and asked whether he preferred Dallas or Houston for the training seminar. Burson claimed that 30 people were present at the seminar which was directed at a promotion of CCS. At a referee's hearing to report on whether jurisdiction was properly obtained over CCS in Texas, Carmine Pellosie, its vice-president, testified that CCS conducted four training seminars in various cities in 1978, but that Texas was not on the tour schedule. Because L & M indicated that there would be a significant amount of business in Texas CCS decided to hold the seminar, and has subsequently held another one. Pellosie also testified that CCS did not specifically advertise in Texas, but did advertise in national magazines, and may have advertised in the southwestern edition of the *Wall Street Journal.* He conceded that he had appeared on a television film clip which appeared in Texas, and which had been arranged by a public relations agency. Although not a commercial, the clip did result in many telephone inquiries. Pellosie also conceded that he arranged for other people to attend the L & M training seminar. The referee recommended that L & M's motion for summary judgment be denied, finding that CCS could be subject to personal jurisdiction in Texas only if its conduct amounted to a regular and systematic course of business activity in that State. In confirming his report, Special Term concluded that CCS' only contact in Texas — solicitation in national magazines — was insufficient to satisfy the due process requirements of personal jurisdiction. We reverse, and find that full faith and credit should be accorded the Texas judgment, inasmuch as CCS had sufficient minimum contacts with the State of Texas to justify the exercise of personal jurisdiction over it under that State's long-arm statute. In *O'Brien*

*v Lanpar Co.* (399 SW2d 340), the Texas Supreme Court set forth the requirements for obtaining jurisdiction over a nonresident defendant. It must purposefully have done some act or consummated some transaction in Texas, the cause of action must arise from the transaction, and the assumption of jurisdiction must not offend traditional notions of fair play. (*Supra*, at p 342.) Similarly, in New York, jurisdiction may be acquired over a nondomiciliary with respect to a cause of action which arises from the transaction of business within New York (CPLR 302, subd [a], par 1). Of course, whether in New York or Texas, the State "may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum State." (*World-Wide Volkswagen Corp. v Woodson,* 444 US 286, 291.) The record here discloses that CCS advertised in national magazines, as well as at least one regional magazine, which circulated in Texas. Payment was received from Texas and the VSA was shipped to Texas where CCS knew its product would be used. As part of the transaction CCS conducted a seminar in Texas and trained some of L & M's employees in the use of the machine. Others who were not previously customers of CCS were invited to the seminar, apparently for solicitation purposes. Prior to the instant sale CCS had sold approximately three or four machines to other companies in Texas. After the sale it sold about 30 to 40 other machines to other companies in Texas. The contention that CCS was not obliged to hold the seminar is irrelevant. It did hold the seminar. Advertising and solicitation are not obligatory, either, but once performed may constitute a basis for finding jurisdiction. Indeed, it is doubtful whether CCS would be able to consummate any sales if it did not conduct training seminars as part of the transaction. We find that, taken together, these activities constitute sufficient contacts with Texas to satisfy the requirements of *O'Brien (supra)*, and yet not offend traditional notions of fair play. Concur — Sandler, J. P., Sullivan, Ross, Silverman and Lynch, JJ.