639 P.2d 1057

HOLMES TUTTLE BROADWAY FORD, INC., an Arizona corporation, Plaintiff/Appellant,

v.

CONCRETE PUMPING, INCORPORATED, a Colorado corporation; John Doe and Jane Doe; Husband and Wife I through V; and ABC Corporations I through III, Defendants/Appellees.

No. 2 CA-CIV 4071.

Court of Appeals of Arizona, Division 2.

Dec. 3, 1981.

Rehearing Date Jan. 11, 1982.

Review Denied Jan. 26, 1982.

Bilby, Shoenhair, Warnock & Dolph, P.C. by John E. Lindberg and Andrew M. Federhar, Tucson, for plaintiff/appellant.

Chandler, Tullar, Udall & Redhair by D. B. Udall, Tucson, for defendants/appellees.

OPINION

HATHAWAY, Chief Judge.

This appeal is from the dismissal for lack of personal jurisdiction over the defendant [Concrete Pumping] of the plaintiff's [Holmes Tuttle] claim sounding in contract and in tort for conversion. The single issue presented on appeal is whether Arizona courts have personal jurisdiction over Concrete Pumping, a Colorado corporation.

The facts are not in dispute. On May 8, 1980, William Powers, parts salesman for Holmes Tuttle, received a telephone call from Leslie Ainsworth, president of Con-

crete Pumping, advising that he had a vehicle "down" in Albuquerque and needed a 3208 Caterpillar Diesel engine. Mr. Ainsworth did not inform Powers that the "down" vehicle in Albuquerque had any relationship to Holmes Tuttle or that it had originally been sold by Holmes Tuttle to Challenge-Cook from whom Concrete Pumping acquired it. This information was learned later.

Powers made several long distance telephone calls in an effort to locate the required engine. He and Ainsworth exchanged several long distance calls. During the course of their conversations, Powers suggested a rebuilt engine, which would have been substantially cheaper than the one ultimately purchased by him. Ainsworth advised that he was interested only in a strictly new engine. Powers finally located a new engine of the type sought and advised Ainsworth. Ainsworth told Powers that he had found another new engine also, but that he wished to buy the higher-priced engine from Holmes Tuttle because it could be delivered earlier. He requested that Holmes Tuttle ship the engine to him. Holmes Tuttle purchased the engine the following day, May 9, 1980, received it, checked it over and shipped it to Concrete Pumping in Albuquerque, New Mexico, pursuant to Ainsworth's direction. On May 25, 1980, Holmes Tuttle sent an invoice statement for the engine to Concrete Pumping, requiring payment of the agreed purchase price by June 10, 1980. Concrete Pumping notified Holmes Tuttle by letter dated June 30, 1980, that it was refusing to pay the purchase price of the engine. The basis for its refusal was explained in the letter, which is here set forth in toto in view of its importance to the problem before us:

"June 30, 1980

Holmes Tuttle Ford, Inc.
P.O. Box 2552
Tucson, AZ 85702
Gentlemen,

On July 6, 1979 we purchased from Challenge-Cook Bros. a Titan 3900 Concrete Pump mounted on a new 1978 Ford CT 8000 ID # Q80DVCC6335 powered by a Cat 3208 engine.

This truck was sold to Challenge-Cook by you, and was pre-delivery checked by you.

The truck was delivered to our yard at 5338 Williams S.E. in Albuquerque, New Mexico.

We have had several Ford CT 8000's with the Caterpillar 1150 or 3208 engine, and have encountered extremely short engine life and severe overheating problems with them. We have contacted Ford on numerous occasions to no avail, but have finally developed a system of preventative maintenance including installation of oversized radiators to get good engine life. Our maintenance system calls for 50 hour air filter changes, 150 hour oil, oil filter and fuel filter changes, and an oil analysis on each change.

Our Albuquerque manager, Ron Vaughn, is the most meticulous maintenance man in our company, and we felt this Ford truck, the only thing available at the time, was a safe gamble in his hands.

Upon receiving the truck, we installed an hour meter, and performed an oil change to remove break in oil. The truck was then placed in service. An oil sample was sent to D.A. Laboratories.

At the next scheduled oil change, another oil sample was sent to D.A. Shortly after sending in the sample, a phone call and telegram was received from D.A. alerting us that the oil was very dirty.

Our manager immediately did another oil change and increased his air filter changes in an attempt to "clean" up the oil.

In his examination of the truck he noted the air filter cannister did not align with the rubber boot on the cowling designed to bring in fresh air to the engine.

He took the truck to Richardson Ford in Albuquerque, to have this and some other problems, such as engine overheating, fixed. He was informed by Richardson Ford that the truck was out of warranty as their "computer" showed the date of sale as being over one year even though we only had a few thousand miles

on the truck, and had a bill of sale showing it to be one month old.

Richardson Ford did not attempt to align the air filter, nor did they explain the alignment pin to Ron Vaughn.

The boot sealing the air intake to the air filter cannister was ruined by the misalignment and was ordered. This took 6 weeks to arrive.

In the interim, we changed air filters daily, but were unable to stop the rapid wear rates inside the engine.

The engine soon began to burn excessive amounts of oil and became hard to start because of poor compression.

We contacted Ford Motor Company in the person of Mike Pfau, Herb Halberstadt, Don Bell, and George Bruchner.

Mr. Pfau visited our yard in Albuquerque, inspected the engine, returned to Phoenix, and called telling us that warranty was denied as the engine failure was caused by dirt and poor engine maintenance.

We pursued every alternative to receive warranty consideration on this engine, including numerous telephone calls and letters to all concerned.

When the engine started using approximately 1 quart of oil per hour, we felt we could wait no longer.

We called you and ordered a new Caterpillar 3208 engine complete, re your invoice number 45062 and had it shipped to us in Albuquerque.

We hereby refuse to pay for this engine, and refuse to return the old engine until credit is issued.

We would not accept a rebuilt engine as the old engine was too badly damaged. It could have initially been rebuilt, but not now. We felt we paid $35,000.00 for a new truck with a new engine for maximum life and minimum maintenance, and will accept nothing less. We paid in good dollars, we expect good equipment.

We also have our cost installing the engine, freight, and excessive oil usage for the period of time we used the old engine.

We are sorry we have to deal with Ford this way, but it only reflects the way Ford has dealt with us. Mike Pfau left messages with his secretary telling her to tell me he would not return my calls as he had made his decision and would not discuss it further.

I invited Mike Pfau and Herb Halberstadt to meet me in Albuquerque to look at the problem, but they declined.

Awaiting your reply.

Sincerely,
CONCRETE PUMPING, INC.
/s/ Leslie E. Ainsworth
Leslie E. Ainsworth
President
LEA/pr"

■ Arizona courts are authorized to exercise personal jurisdiction over nonresident defendants under rule 4(e)(2), 16 A.R.S., Rules of Civil Procedure, which provides:

"When the defendant is a resident of this state, or is a corporation doing business in this state, or is a person, partnership, corporation or unincorporated association subject to suit in a common name which has caused an event to occur in this state out of which the claim which is the subject of the complaint arose, service may be made as herein provided, and when so made shall be of the same effect as personal service within the state."

Under the due process clause of the United States Constitution, personal jurisdiction can be exercised if the defendant has reasonable notice that an action has been brought and has sufficient connection with the forum state so that it is fair to require the defendant to defend in the forum. *Kulko v. Superior Court*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Phillips v. Anchor Hocking Glass Corp.*, 100 Ariz. 251, 413 P.2d 732 (1966); *Northern Propane Gas Co. v. Kipps*, 127 Ariz. 522, 622 P.2d 469 (1980).

■ When long-arm statute jurisdiction is challenged by a nonresident defendant, the party asserting jurisdiction has the burden of establishing it. *Manufacturers' Lease Plan, Inc. v. Alverson Draughon College*, 115 Ariz. 358, 565 P.2d 864 (1977). In

reviewing the granting of the motion to dismiss, we look to the pleadings and the affidavits in support of and in opposition to the motion. Ibid.

The defendant contends that to subject a nonresident defendant to the personal jurisdiction of the State of Arizona, certain minimum contacts with the state must be established, and that the single transaction involved here is insufficient, citing *Northern Propane Gas Company v. Kipps*, supra. Plaintiff counters that the quality of the contact outweighs the quantum in the instant case, that the nonresident defendant, having purposely caused an event to occur in Arizona out of which the loss arose, should reasonably anticipate being haled into court in Arizona. We agree.

To subject a nonresident defendant to in personam jurisdiction, there must be sufficient contact with the forum so that "he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 297, 100 S.Ct. at 567; *Northern Propane Gas Co. v. Kipps*, 127 Ariz. at 526, 622 P.2d 469. We find that the defendant's conduct and connection with this state was sufficient that it could reasonably anticipate being subjected to suit in this forum. Indeed, it appears that the defendant's conduct in ordering the engine and intending not to pay for it was tantamount to a clear and purposeful challenge for a lawsuit. The defendant was an active rather than a passive buyer, see *Manufacturers' Lease Plans v. Alverson Draughon College*, supra, and initiated the contact with the plaintiff, rejecting a rebuilt engine and insisting upon a new engine. The defendant opted for the engine found by the plaintiff over one located by another dealer at a lower price, apparently in view of the earlier availability through the plaintiff. We cannot conclude but that the defendant, having in effect selected Holmes Tuttle as its plaintiff, could reasonably expect to be sued in the forum where it contacted the party to order the engine.

The order of dismissal is set aside and the matter is remanded for further proceedings consistent with this opinion.

HOWARD and BIRDSALL, JJ., concur.