CHINA EXPRESS, INC., Appellant, v VOLPI & SON MACHINE CORP., Respondent.

First Department, March 24, 1987

**APPEARANCES OF COUNSEL**

*Samuel A. Abady* of counsel *(Matthew G. Dineen* with him on the brief; *Abady & Jaffe,* attorneys), for appellant.

*Anthony P. Gallo* of counsel *(Gallo & Buonora,* attorneys), for respondent.

**OPINION OF THE COURT**

SULLIVAN, J.

China Express, Inc., an Arizona corporation engaged in the manufacture and sale of Oriental foodstuffs, sued Volpi & Son Machine Corp., a New York corporation not qualified to do business in Arizona, in the Superior Court of Arizona for breach of contract and fraudulent conversion arising out of Volpi & Son's failure to deliver a noodle processing machine and to refund the $8,000 which China Express had paid toward its purchase price. The summons and complaint were served by registered mail, and Volpi & Son failed to appear or answer. After inquest, the Arizona court entered a judgment against it in the sum of $43,814.26.

China Express then commenced this action on the Arizona judgment and, pursuant to CPLR 3213, moved for accelerated judgment in lieu of complaint. Volpi & Son responded by arguing that the judgment was not entitled to full faith and credit since the Arizona court had lacked jurisdiction over it. Special Term held the motion in abeyance and referred the matter to a Special Referee to hear and report with a recommendation on the issue of whether Volpi & Son's contacts with the State of Arizona were sufficient to subject it to long-arm jurisdiction. The following recital of the facts is taken from the transcript of that hearing.

China Express first contacted Volpi & Son in New York sometime in November or December 1982 when Tony Lee, its president, called to inquire about the availability of a machine that would process an egg roll wrap and Oriental noodle. Volpi & Son's vice-president, Joseph Volpi, told Lee that he would be attending a trade show in Phoenix in February 1983, and could be contacted there to discuss the matter.

It is undisputed that in February 1983 Lee met Volpi at a trade show in Phoenix, where Volpi was exhibiting pasta machines for Pasta World, Inc., another company in which he had a financial interest. Although Volpi did not have the particular type of processing machine with him, the two met later at a restaurant and discussed, *inter alia,* the specifications for such a machine, which Volpi schematically drew on a pad, and the price, including the terms of payment for various pieces of machinery, some new and some used, which Volpi said he could obtain.[1] In Volpi's notes of that meeting reference was made to a "Volpi mini-cutter/folder with 4 cuts" and a "mini-noodle cutter 4 cuts $35,000", terms which closely characterize the machine ultimately described in a written contract prepared by Volpi & Son.

It is also undisputed that the parties did not conclude their negotiations at the meeting in Phoenix. In March 1983, pursuant to Volpi's invitation, Lee flew to New York and inspected various types of machinery sold by Volpi & Son. After Lee's visit, Volpi prepared and mailed a written contract, which Lee signed in Phoenix and returned to Volpi & Son in New York together with an $8,000 check payable to Volpi & Son and drawn on China Express' account at the Arizona Bank. Volpi & Son negotiated the check and collected its proceeds. The machine was never delivered.

The contract provides as follows: "Once [China Express] has installed the above equipment it will notify [Volpi & Son] and Mr. Peter Volpi will come to run and adjust the machines at [China Express'] plant." In addition, the contract provides for a one-year warranty of parts and service from the date of delivery in Phoenix; it also requires Volpi & Son to make any necessary repairs and replacements within five days of notice.

The Referee issued a report recommending that China Express' motion for summary judgment be denied and the complaint dismissed. His recommendation was principally based upon a finding that, although Arizona was the site of negotiations, the parties failed to reach agreement there and, thus, the requirements of that jurisdiction's long-arm statute were not satisfied. Special Term confirmed the Referee's report and dismissed the complaint. This appeal followed. We reverse.

---

1. Volpi was obviously acting as a representative of Volpi & Son in these discussions, inasmuch as he has testified that the other company which he represented, Pasta World, Inc., did not even sell noodle makers (the type of machinery Lee needed), but only pasta makers.

Where a sister State's exercise of long-arm jurisdiction is challenged, the law of that State, even though it may be at odds with the New York rule, determines whether jurisdiction was properly obtained. *(Augusta Lbr. & Supply v Sabbeth Corp.,* 101 AD2d 846; *L & M House of Jeans v Communication Control Sys.,* 88 AD2d 884, *appeal dismissed* 57 NY2d 956.) In that regard, we should note, New York, unlike Arizona, has not chosen to extend its long-arm jurisdiction to the limits of constitutional tolerance. *(See, Longines-Wittnauer Watch Co. v Barnes & Reinecke,* 15 NY2d 443; *also, Masonite Corp. v Hellenic Lines,* 412 F Supp 434, 438; *Columbia Pictures Indus. v Schneider,* 435 F Supp 742, 749.)

Arizona Rules of Civil Procedure, rule 4 (e) (2), authorizes the Arizona courts to exercise personal jurisdiction over non-resident defendants who have "caused an event to occur in this state out of which the claim which is the subject matter of the complaint arose".[2] The Supreme Court of Arizona has held that this long-arm provision was "intended to give Arizona residents the maximum privileges permitted by the Constitution of the United States." *(Phillips v Anchor Hocking Glass Corp.,* 100 Ariz 251, 254, 413 P2d 732, 733; *Maloof v Raper Sales,* 113 Ariz 485, 557 P2d 522; *accord, Rhoads v Harvey Publ.,* 124 Ariz 406, 604 P2d 670.) Thus, in applying this statute, Arizona courts engage in a two-step analysis. They first determine whether the defendant has caused an event to occur in Arizona out of which the subject claim arose, and then decide whether the State's exercise of personal jurisdiction over the defendant is compatible with the require-ments of the Fourteenth Amendment's Due Process Clause. *(See, e.g., Maloof v Raper Sales, supra,* 113 Ariz, at 487, 557 P2d, at 524; *Meyers v Hamilton Corp.,* 143 Ariz 249, 693 P2d 904.)[3]

In *International Shoe Co. v Washington* (326 US 310), the Supreme Court articulated the standard by which exercises of personal jurisdiction are measured: "[D]ue process requires

---

**2.** The Arizona statute is similar to, but somewhat broader than, CPLR 302 (a) (1), which provides for jurisdiction over a nondomiciliary who "transacts any business within the state or contracts anywhere to supply goods or services in the state".

**3.** In invoking this statute the Arizona court seeks to assert specific jurisdiction over a nonresident defendant, as opposed to general jurisdiction, pursuant to which it would exercise personal jurisdiction over a defendant "in a suit not arising out of or related to the defendant's contacts with the forum". *(Helicopteros Nacionales de Colombia v Hall,* 466 US 408, 414, n 9; *see also, Perkins v Benguet Min. Co.,* 342 US 437.)

only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *(Supra,* at 316, quoting *Milliken v Meyer,* 311 US 457, 463.) Recognizing that the unilateral activity of the party claiming a relationship with a nonresident defendant will not satisfy the minimum contacts requirement, the Supreme Court has held that there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *(Hanson v Denckla,* 357 US 235, 253.) This requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts * * * or of the 'unilateral activity of another party or a third person' " *(Burger King Corp. v Rudzewicz,* 471 US 462, 475). "Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *(Supra,* at 475, quoting *McGee v International Life Ins. Co.,* 355 US 220, 223.) Parties who "reach out beyond one state and create continuing relationships and obligations with citizens of another state" have effectively consented to the imposition of jurisdiction over them in the other State. *(Travelers Health Assn. v Virginia,* 339 US 643, 647.) Even a single contract can support in personam jurisdiction as long as it creates a " 'substantial connection' " with the forum. *(Burger King Corp. v Rudzewicz, supra,* 471 US, at 475, n 18; *see, McGee v International Life Ins. Co., supra,* 355 US, at 223.) In some instances, however, "single or occasional acts" related to the forum may be insufficient to establish jurisdiction if "their nature and quality and the circumstances of their commission" merely create an "attenuated" connection. *(International Shoe Co. v Washington, supra,* 326 US, at 318; *World-Wide Volkswagen Corp. v Woodson,* 444 US 286, 299.) A critical consideration in such cases is whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *(Supra,* at 297.)

In *Burger King Corp. v Rudzewicz* (471 US 462, *supra),* its most recent pronouncement on the subject, the Supreme Court, in an action based on a breach of franchise obligations, held that a Florida court could assert long-arm jurisdiction

over a Michigan resident who, although not physically present in the forum, had entered into a 20-year franchise contract with the plaintiff, a Florida based corporation, to operate a restaurant in Michigan. The franchise agreements provided that the relationship was established in Miami and governed by Florida law.

Arizona has expressly adopted the Supreme Court's minimum contacts test. *(Phillips v Anchor Hocking Glass Corp., 100 Ariz 251, 413 P2d 732, supra; see, Meyers v Hamilton Corp., 143 Ariz 249, 693 P2d 904, supra.)* The Arizona rule is that minimum contacts with the forum State are acceptable as long as traditional notions of fair play and substantial justice will not be offended by assertion of long-arm jurisdiction. *(Supra; Molybdenum Corp. v Superior Ct., 17 Ariz App 354, 498 P2d 166.)* Thus, the issue before this court is whether Volpi & Son has caused an event to occur in Arizona from which China Express' cause of action arose, and whether Arizona's assertion of in personam jurisdiction can be sustained under the minimum contacts analysis developed by the United States Supreme Court. In this regard, a review of Arizona's decisional law on the subject is in order.

In *Manufacturers' Lease Plans v Alverson Draughon Coll.* (115 Ariz 358, 565 P2d 864), the Arizona Supreme Court, holding that an Alabama corporation was within reach of Arizona's long-arm jurisdiction, found that in assenting to a renewal of an equipment rental agreement expressly made subject to Arizona law and obligating the plaintiff, an Arizona corporation, to " 'use its best efforts [in Arizona] to make spare parts available to [the defendant in Alabama] within 10 days of the requirement therefor' ", an obligation which inured to the defendant's benefit, the defendant had "tied itself commercially with Arizona, rendering fair an assertion of personal jurisdiction by our courts." *(Supra, at 360, at 866.)* In *Rhoads v Harvey Publ.* (124 Ariz 406, 604 P2d 670, *supra),* the court extended Arizona's jurisdiction over a nonresident defendant for its alleged fraud in terminating the plaintiff's services as a cartoonist. Over a 10-year period the defendant had dealt with the plaintiff, an Arizona resident, by mail and telephone and mailed checks to him in Arizona in payment of the materials which he prepared for it. In *Holmes Tuttle Broadway Ford v Concrete Pumping* (131 Ariz 232, 639 P2d 1057), the court asserted long-arm jurisdiction over a nonresident defendant whose only contact with the State was to order an engine, in the payment for which he defaulted, from an

Arizona dealer. In *Meyers v Hamilton Corp.* (143 Ariz 249, 693 P2d 904, *supra)*, the court extended the State's long-arm jurisdiction to a Tennessee pleasure cruise operator for the misdelivery of the plaintiffs' luggage, even though the defendant never physically entered Arizona. The court held that since the tour was arranged through an Arizona travel agent with whom the defendant was listed, and the plaintiffs paid their fare in Arizona and received their documentation there, the contract out of which the claim arose was made in Arizona. The court further found that inasmuch as the alleged breach was coextensive with the reach of the underlying contract, the necessary nexus to the State had been shown. Such analysis, said the court, "comports with the broad remedial purpose of our long arm statute which has been construed to confer upon Arizona residents the maximum privileges permitted by the Constitution of the United States." *(Supra,* at 252, at 907.) In *Rollins v Vidmar* (147 Ariz 494, 711 P2d 633), the court upheld Arizona's exercise of long-arm jurisdiction over a California resident, the plaintiff's former son-in-law, in an action on a loan balance. The court found that since the loan had been solicited from an Arizona resident and the loan proceeds withdrawn from an account in an Arizona bank and mailed from that State, the defendant had caused an event to occur in Arizona and purposely availed himself of the privilege of conducting activities within that State.

In our view, Volpi & Son's contacts with Arizona were sufficient to justify, consonant with due process, that State's assertion of personal jurisdiction over it. It is evident that the initial negotiations between the parties took place in Arizona, and that Volpi & Son arranged matters so that China Express executed the written contract in that State and, in conformity with its obligations thereunder, drew an $8,000 check on an Arizona bank in payment of the required deposit. That check was cashed by Volpi & Son and ultimately honored by the Arizona bank. Moreover, the contract manifestly contemplated an ongoing relationship between the parties which would compel the presence of Volpi & Son or its agents in Arizona. It required, at a minimum, an installation visit in Arizona and further service, as needed, for at least one year. Finally, China Express has alleged a fraudulent conversion of its $8,000 deposit, an act which is "tantamount to a clear and purposeful challenge for a lawsuit" *(Holmes Tuttle Broadway Ford v Concrete Pumping, supra,* 131 Ariz, at 235, 639 P2d, at 1060), and which has caused injury to it in Arizona.

In summary, we find that Volpi & Son's activities in Arizona, as demonstrated by its presence in that State for the initial negotiations, its solicitation of a written contract from China Express there, its contractual commitment to provide any necessary service and repairs in Arizona, the drawing of the $8,000 deposit check on an Arizona bank, and the injury caused China Express in that State by its failure to refund the $8,000, are sufficiently purposeful and substantial as to justify the Arizona court's assertion of jurisdiction over it. In the circumstances, it was not constitutionally unreasonable for the Arizona court to require Volpi & Son, a nonresident, to respond to the claims of China Express in that jurisdiction.

Accordingly, the order of the Supreme Court, New York County (David H. Edwards, Jr., J.), entered June 12, 1986, denying plaintiff's motion to reject the Special Referee's report and granting defendant's cross motion to confirm said report and dismiss the complaint, should be reversed, on the law and the facts, the motion granted, the cross motion denied and summary judgment granted in favor of plaintiff, with costs and disbursements.

SANDLER, J. P., CARRO and ELLERIN, JJ., concur.

Order, Supreme Court, New York County, entered on June 12, 1986, unanimously reversed, on the law and the facts, the motion granted, the cross motion denied and summary judgment granted in favor of plaintiff. Appellant shall recover of respondent $75 costs and disbursements of this appeal.