824 F.2d 786
 CORPORATE INVESTMENT BUSINESS BROKERS, an Arizona
corporation, Plaintiff-Appellant,
v.
Albert MELCHER, husband; Rosemary Melcher, wife; Melcher &
Associates, dba Corp. Investment Business Brokers,
Defendants-Appellees.
 No. 86-2524.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 9, 1987.
Decided Aug. 12, 1987.
 
 David F. Gaona, Phoenix, Ariz., for defendants-appellees.
 Roger L. Cohen, Phoenix, Ariz., for plaintiff-appellant.
 Appeal from the United States District Court for the District of Arizona.
 Before FLETCHER, BEEZER and THOMPSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Corporate Investment Business Brokers, Inc. ("CIBB") appeals from the dismissal of its Arizona diversity action against its franchisee, Melcher, a Colorado defendant, for lack of personal jurisdiction. We reverse.
 
 BACKGROUND
 
 2
 CIBB is an Arizona corporation that sells and administers franchises for business brokerages on a nationwide basis. Franchisees of CIBB are licensed to use the CIBB trade name, logo, and service marks for seven years. Franchisees participate in a training program in Arizona, and are provided with training for salespeople and on-the-site training upon opening, a CIBB operations manual, and a continuing consultation service. In return, CIBB charges an initial fee; thereafter franchisees are required to submit periodic progress reports and listing summaries and to pay royalties and advertising fees based on their gross sales.
 
 
 3
 Albert and Rosemary Melcher are Colorado residents and Melcher & Associates is a Colorado corporation. We refer to them collectively as "Melcher." In 1982, Melcher, in response to a CIBB advertisement, contacted CIBB by telephone. Later, Melcher met with CIBB representatives in Arizona and was provided with documents and information relating to the CIBB franchise program. Contract negotiations were conducted between Colorado and Arizona by mail and telephone. A franchise agreement was executed in August of 1982 in Colorado. The agreement provided that Arizona law would govern disputes arising under it. Melcher's CIBB franchise operates as Melcher & Associates in Denver, Colorado.
 
 
 4
 Relying on the Arizona long-arm statute, CIBB filed suit against Melcher in Arizona state court in November, 1985. CIBB alleged that Melcher breached the franchise agreement in failing to pay $14,222.78 in royalties and advertising fees due for the period April to October 1985. Melcher removed the case to the United States District Court for the District of Arizona on the basis of diversity. 28 U.S.C. Sec. 1441(a). The district court granted Melcher's motion to dismiss for lack of personal jurisdiction holding that, although Melcher had sufficient contacts with Arizona, the exercise of personal jurisdiction over him would nonetheless be unreasonable.
 
 DISCUSSION
 
 5
 Because the underlying facts are undisputed, the district court's determination that it could not exercise personal jurisdiction over Melcher without violating due process is subject to de novo review. Lake v. Lake, 817 F.2d 1416, 1420 (9th Cir.1987); Hirsh v. Blue Cross, Blue Shield, 800 F.2d 1474, 1477 (9th Cir.1986). Also reviewed de novo is the court's interpretation of Arizona law regarding personal jurisdiction. Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 838 (9th Cir.1986); Haisten v. Grass Valley Medical Reimbursement Fund, Ltd., 784 F.2d 1392, 1402 (1986).
 
 
 6
 Although the burden of establishing personal jurisdiction is on the plaintiff, the plaintiff's allegations are deemed to be correct, and "[w]here, as in this case, the trial court ruled on the issue relying on affidavits and discovery materials without holding an evidentiary hearing, dismissal is appropriate only if the plaintiff has not made a prima facie showing of personal jurisdiction." Fields v. Sedwick Associated Risks, Ltd., 796 F.2d 299, 301 (9th Cir.1986).
 
 
 7
 Because this is a diversity case, any assertion of personal jurisdiction must satisfy Arizona state law requirements as well as afford due process. Lake, 817 F.2d at 1420; Decker Coal Co., 805 F.2d at 838.
 
 Arizona Law
 
 8
 The Arizona long-arm statute asserts personal jurisdiction "[w]hen the defendant ... is a person, partnership, [or] corporation ... which has caused an event to occur in this state out of which the claim which is the subject of the complaint arose." 16 Ariz.Rev.Stat.Ann.R.Civ.P. 4(e)(2). The Arizona courts apply a two part test in determining whether jurisdiction exists under the statute:
 
 
 9
 1. Did defendant cause an event to occur in Arizona out of which the claim arose?
 
 
 10
 2. If the answer to the first question is in the affirmative, did defendant have sufficient minimum contacts with Arizona to justify the assumption by an Arizona court of personal jurisdiction.
 
 
 11
 Rollins v. Vidmar, 147 Ariz. 494, 711 P.2d 633, 634 (1985).
 
 
 12
 It is clear that Arizona would consider the breach of a contract with an Arizona resident, which is partially performed in Arizona, a sufficient "event" to trigger the second-level due process analysis.[1] See Manufacturers' Lease Plans, Inc. v. Alverson Draughon College, 115 Ariz. 358, 565 P.2d 864, 865-67 (1977) (assignment by California lessor to Arizona corporation of its rights under agreement with Alabama lessee sufficient where lease governed by Arizona law); Rollins, 711 P.2d at 634-35 (holding that breach by Californian of contract with Arizona resident, negotiated while Arizonan was in Illinois, was Arizona event where Arizonan's performance occurred in Arizona and payments were made in Arizona); Holmes-Tuttle Broadway Ford v. Concrete Pumping, Inc., 131 Ariz. 232, 639 P.2d 1057, 1060 (1982) (ordering product from Arizona plaintiff and intending not to pay for it provides sufficient minimum contacts); Powder Horn Nursery, Inc. v. Soil & Plant Laboratory, Inc., 514 P.2d at 273-74 (Ariz.App.1973) (holding that "it is not the occurrence of the initiating act of causation which is required in this state, but rather that the resulting event or effect be in this state," and that "in rendering contractual services to [the Arizona] plaintiff, the defendant has caused an event to occur in Arizona").
 
 
 13
 The second prong of Arizona's personal jurisdiction test is a recognition that the state must not violate a defendant's due process rights. In order to resolve both the state and the constitutional issues in this case, it is necessary to decide whether the exercise of jurisdiction over Melcher in Arizona exceeds this constitutional limitation.
 
 Due Process
 
 14
 The Supreme Court recently discussed the constitutional limitations on the exercise of personal jurisdiction:
 
 
 15
 The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful "contacts, ties, or relations." International Shoe Co. v. Washington, 326 U.S., at 319, 66 S.Ct. at 160....
 
 
 16
 Where a forum seeks to assert specific jurisdiction[2] over an out-of-state defendant ... [the]' "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities at residents of the forum, Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984), and the litigation results from alleged injuries that "arise out of or relate to" those activities, Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984).
 
 
 17
 Burger King Corp. v. Rudzewicz (Burger King), 471 U.S. 462, 471-73, 105 S.Ct. 2174, 2181-82, 85 L.Ed.2d 528 (1985) (footnotes omitted).
 
 
 18
 Our court has analyzed these constitutional requirements in terms of a three-part test:
 
 
 19
 1. The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.
 
 
 20
 2. The claim must be one which arises out of or results from the defendant's forum-related activities.
 
 
 21
 3. Exercise of jurisdiction must be reasonable.
 
 
 22
 Haisten, 784 F.2d at 1397 (emphasis added); see also Lake, 817 F.2d at 1421. Application of the test here satisfies us that jurisdiction over Melcher in Arizona would not constitute a violation of due process.
 
 1. Purposeful Availment
 
 23
 The Supreme Court's recent decision in Burger King, which involves the exercise of jurisdiction over a franchisee in the franchisor's forum, is particularly relevant.[3] The Burger King Court refused to find that personal jurisdiction could be based solely on the existence of a contract between a defendant and a resident of the forum state. 471 U.S. at 478, 105 S.Ct. at 2185. It insisted that past and future consequences of the contractual arrangement involving a resident of the forum state be evaluated. Id. at 479, 105 S.Ct. at 2185. The focus is on the relationship between the parties:
 
 
 24
 [W]here the defendant ... has created "continuing obligations" between himself and residents of the forum ... he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.
 
 
 25
 Burger King, 471 U.S. at 475-76, 105 S.Ct. at 2183-84 (citations omitted) (emphasis added).
 
 
 26
 In its application of the test for purposeful availment, the Burger King court recognized that wire and phone transmission make possible impact on the forum state without the physical presence of the actor. Id. at 476, 105 S.Ct. at 2184; Hirsh, 800 F.2d at 1478. Accordingly, physical contacts in the forum are not required so long as the defendant "purposefully directs" his commercial activities to forum residents. Burger King, 471 U.S. at 476, 105 S.Ct. at 2184; Haisten, 784 F.2d at 1399. There can be no question but that Melcher, in forming a long-term franchise relationship with CIBB "purposely directed" commercial activities to Arizona, thereby "purposely availing" itself of Arizona benefits.[4] The district court correctly determined that Melcher had sufficient contact with Arizona.[5]
 
 2. Arising Out of Forum Related Activities
 
 27
 Melcher's forum related activity is its relationship with CIBB under the franchise agreement. Because CIBB's claims arise out of this agreement, this element of the jurisdiction test is satisfied. See Hirsh, 800 F.2d at 1480; Haisten, 784 F.2d at 1400; cf. Burger King, 471 U.S. at 480, 105 S.Ct. at 2186 ("[franchisee's] refusal to make the contractually required payments in Miami ... caused foreseeable injuries to the corporation in Florida").
 
 3. Reasonableness
 
 28
 Once the requisite minimum contacts with the forum state have been established, the reasonableness of jurisdiction in the forum may be tested by considering the contacts "in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.' " Burger King, 471 U.S. at 476, 105 S.Ct. at 2184 (quoting International Shoe Co. v. Washington, 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945)). The relevant factors may include:
 
 
 29
 (1) The extent of purposeful interjection into the forum state;
 
 
 30
 (2) The burden on the defendant of defending in the forum;
 
 
 31
 (3) The extent of conflict with the sovereignty of defendant's state;
 
 
 32
 (4) The forum state's interest in adjudicating the dispute;
 
 
 33
 (5) The most efficient judicial resolution of the controversy;
 
 
 34
 (6) The importance of the forum to plaintiff's interest in convenient and effective relief;
 
 
 35
 (7) The existence of an alternative forum.
 
 
 36
 Decker Coal Co., 805 F.2d at 840; Lake, 817 F.2d at 1422.
 
 
 37
 Once it has been shown that the defendant purposely availed himself of the forum's benefits, the forum's exercise of jurisdiction over him is presumptively reasonable. Burger King, 471 U.S. at 476, 105 S.Ct. at 2184; Hirsh, 800 F.2d at 1481. In order to rebut that presumption the defendant "must present a compelling case" that jurisdiction would, in fact, be unreasonable. Burger King, 471 U.S. at 477, 105 S.Ct. at 2185.[6] Legitimate concerns that are raised should, where possible, be solved in ways short of finding that personal jurisdiction violates due process. See id. For example, choice-of-law rules may take care of clashes between states' policies, and unreasonable inconvenience to the defendant may be dealt with under change-of-venue provisions. Id.
 
 
 38
 Here, the district court found that the first two prongs of the due process test--"purposeful availment" and "arising out of the forum related activities"--were satisfied, but found that the exercise of jurisdiction over Melcher would be unreasonable. We disagree.
 
 
 39
 First, we disagree with the court's conclusion that the "extent of purposeful interjection" weighed in favor of Melcher. "But for the fact that Melcher was required to remit payment to CIBB in Arizona," the court reasoned, "he would have no contacts with Arizona." The district court gave no weight to Melcher's contacts based on the continuing benefits it derived from its association with CIBB. Rather, it reverted to an outmoded vision of contacts analysis that recognizes primarily physical actions by the defendant in the forum state--here, the payment of money. Furthermore, Ninth Circuit cases give the "purposeful interjectment" factor no weight once it is shown that the defendant purposefully directed its activities to the forum state, see Decker Coal Co., 805 F.2d at 841; Hirsh, 800 F.2d at 1481, and the Supreme Court does not include this factor in its list of relevant factors at all. See Burger King, 471 U.S. at 477, 105 S.Ct. at 2184.
 
 
 40
 Second, the district court found that defending in Arizona would create a heavy burden on Melcher due to his work responsibilities in Denver. If, however, the burden on Melcher were truly substantial, the more appropriate response would be a change of venue. See Hirsh, 800 F.2d at 1481; 28 U.S.C. Sec. 1404(a). As this court has stated: "Unless such inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction." Id. Denver and Phoenix are but hours apart by air. Since Melcher would have to be away from his business to attend trial regardless of where the trial was held, any inconvenience Melcher might suffer from travel certainly does not rise to the level of a due process violation.
 
 
 41
 Third, although the court acknowledged Arizona's "interest in seeing that its residents are provided an effective means of redress when they are injured by a breach of contract," rather than weighing this factor in favor of jurisdiction, the court simply noted that another jurisdiction could protect Arizona's interest by applying the contractual Arizona choice-of-law provision. In so doing, the district court improperly collapsed two distinct questions. In examining a forum state's interest in adjudicating a dispute, the question is whether the forum state is concerned with the outcome of the litigtion. Whether another reasonable forum exists becomes an issue only when the forum state is shown to be unreasonable. Arizona's interest in providing effective redress to CIBB supports the reasonableness of jurisdiction in Arizona.
 
 
 42
 Fourth, and finally, the court found that, because all Melcher's witnesses were Colorado residents, and CIBB had not "clearly asserted or established" the "apparent" fact that it would call Arizona witnesses, it would be more efficient to try the case in Colorado. Even if we assume that the district court could properly ignore the probability that Arizona witnesses would appear at trial,[7] it improperly ignored the fact that modern transportation reduces the burden of travel for out-of-forum witnesses, see Hirsh at 1481, as well as the preference for dealing with such difficulties as matters of venue, not jurisdiction. Id.
 
 
 43
 In short, the problems confronting Melcher are identical to those that face most parties who defend actions outside their home states--they and their witnesses must travel to distant fora. See Lake, 817 F.2d at 1423. Melcher was required to present compelling reasons in support of his claim that jurisdiction over him in Arizona is unreasonable. Burger King, 471 U.S. at 477, 105 S.Ct. at 2184; Hirsh, 800 F.2d at 1481. This he did not do.[8] Accordingly, we hold that CIBB sustained its burden to establish prima facie personal jurisdiction over Melcher in Arizona.
 
 
 44
 REVERSED and REMANDED.
 
 
 
 [1]
 The district court, relying on the fact that the drafters of the Arizona long-arm statute intended it to extend to the outer limits of constitutional due process, see Meyers v. Hamilton Corp., 143 Ariz.App. 249, 693 P.2d 904, 907 (Ariz.1984); Powder Horn Nursery, Inc. v. Soil & Plant Laboratory, Inc., 20 Ariz.App. 517, 514 P.2d 270, 273 (1973), collapsed "the usual two-step analysis ... into a single search for the outer limits of what due process permits." The district court was probably correct that it could dispense with the "cause or event" analysis because it would not be possible to demonstrate sufficient minimum contacts in the absence of any impact by the defendant in the forum state. The district court's approach finds support in the fact that on occasion Arizona courts have addressed only the minimum contacts (due process) requirement. See, e.g., Holmes-Tuttle Broadway Ford v. Concrete Pumping, Inc., 131 Ariz. 232, 639 P.2d 1057, 1059-60 (Ariz.App.1981); cf. Lake v. Lake, 817 F.2d 1416, 1420 (9th Cir.1987) (collapsing the two-step analysis under Idaho law)
 
 
 [2]
 Specific (or limited) jurisdiction looks to the relationship between the defendant's forum contacts and the particular cause of action. In contrast, general jurisdiction, which would support jurisdiction over a defendant regardless of the connection between the cause of action and the forum, requires "substantial" or "continuous and systematic" contacts between the defendant and the forum state. See Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 839 (9th Cir.1986). It is specific (limited) jurisdiction that is at issue in this appeal
 
 
 [3]
 The Burger King court cautioned that it was not announcing a per se rule that all franchisees are amenable to suit in the franchisor's forum. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 485 n. 28, 105 S.Ct. 2174, 2189, n. 28, 85 L.Ed.2d 528 (1985). Thus we consider the Burger King Court's analysis as it applies to the particular facts of this case
 
 
 [4]
 In one respect, the defendant in Burger King had more attenuated forum contacts than does Melcher. In Burger King, most of the Michigan francisee's contacts with Burger King were with Burger King's Michigan office, yet the disputed forum was Florida, the home of Burger King's corporate headquarters. See Burger King, 471 U.S. at 488-89, 105 S.Ct. at 2190-91 (Stevens, J., dissenting). Here, there was no intermediary between CIBB in Arizona and Melcher in Colorado
 
 
 [5]
 Although this court has stated that merely adopting a forum's law to govern a contract satisfies the purposeful-availment test, Decker Coal Co., 805 F.2d at 840, the Supreme Court in Burger King held that a choice-of-law provision "standing alone would be insufficient to confer jurisdiction." 471 U.S. at 482, 105 S.Ct. at 2187. The Court went on to find, however, that when considered alongside a contractual relationship of interdependence, such a provision "reinforced [the] deliberate affiliation with the forum state and the reasonable foreseeability of possible litigation there." Id
 
 
 [6]
 On the other hand, these factors "sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." Burger King, 471 U.S. at 477, 105 S.Ct. at 2184
 
 
 [7]
 CIBB made this point clear in its post-judgment motion for reconsideration and supplemental affidavit
 
 
 [8]
 Compare Asahi Metal Indus. v. Superior Court, --- U.S. ----, 107 S.Ct. 1026, 1033-35, 94 L.Ed.2d 92 (1987) (holding that, in suit by Taiwanese manufacturer for indemnification against Japanese manufacturer, the assertion by California court of personal jurisdiction over Japanese manufacturer was unreasonable); Fields v. Sedwick Associated Risks, Ltd., 796 F.2d 299, 303 (9th Cir.1986) (finding unreasonable jurisdiction in a California court over "a claim by a British subject against English defendants arising from an English insurance policy")