**BURROWS PAPER CORPORATION,**
**Plaintiff**

v.

**R.G. ENGINEERING, INC., Defendant.**

No. 6:04–CV–448.

United States District Court,
N.D. New York.

March 3, 2005.

Bond Schoeneck & King, PLLC, Syracuse, NY (Lillian A. Abbott–Pfohl, Thomas Keleher, of counsel), for plaintiff.

Costello, Cooney & Fearon, PLLC, Syracuse, NY (David S. Grasso, of counsel), for defendant.

### MEMORANDUM–DECISION and ORDER

HURD, District Judge.

## I. INTRODUCTION

On March 22, 2004, plaintiff Burrows Paper Corporation ("Burrows" or "plaintiff") brought an action against defendant R.G. Engineering, Inc. ("RG" or "defendant") claiming breach of contract and breach of warranty. RG filed a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Burrows opposed the motion and requested that the motion be denied or additional discovery be permitted on the jurisdictional issue. Alternatively, should the motion be granted, Burrows requested that the action be transferred to the Eastern District of Virginia, pursuant to 28 U.S.C. § 1406(a), instead of being dismissed in its entirety. Oral argument was heard on June 22, 2004, in Utica, New York. Decision was reserved.

## II. FACTS

As alleged in the complaint, Burrows is a New York Corporation with its principal place of business in Little Falls, New York. RG is a Virginia corporation with its principal place of business in Virginia Beach, Virginia. Although plaintiff alleges that defendant is a press refurbisher, defendant is primarily in the business of selling new equipment manufactured to or-

der, and only occasionally engages in the rebuilding or refurbishing of a press.

In the fall of 2002, Burrows considered purchasing a used RG Flexographic printing press (the "press") from non-party Cascade Sunoco. Before purchasing the press, plaintiff contacted the defendant at its offices in Virginia Beach to confirm that it could rebuild the press in order to meet the plaintiff's requirements. Defendant represented to plaintiff that it could do so. On January 7, 2003, plaintiff purchased the press from Cascade Sunoco for $325,000, and subsequently entered into a contract with the defendant to rebuild the press for $450,000. The contract was negotiated and executed solely by telephone and mail contact with plaintiff in New York. Burrows' initial contact with RG was through a telephone call made to Peter Brunett ("Brunett"), an employee of RG, on his Virginia based cellular telephone. At the time of the call, Brunett happened to be in New York. All subsequent discussions between RG and Burrows were conducted, on behalf of RG, from RG's Virginia offices. The contract was embodied by a purchase order that was ultimately drafted by plaintiff in New York. It required the defendant to ship all future billing statements to New York. In fact, all billing statements from the defendant to the plaintiff were sent to the New York headquarters.

On March 18, 2003, the date by which RG was to deliver the rebuilt press, it informed Burrows that further work on the press was necessary. Relying on this communication, plaintiff issued additional purchase orders for $57,000 to RG. In October 2003, defendant completed rebuilding the press at its Virginia Beach plant and shipped it to Burrows Packaging Group, a subsidiary or operating division of Burrows, located in Mt. Vernon, Ohio. Pursuant to the terms of the contract, defendant sent employees to the plant in Ohio to supervise set-up and installation of the press. Plaintiff maintains that the press was not rebuilt properly and, therefore, does not meet its requirements and needs. Ultimately, plaintiff claims that defendant breached its contract and warranty, causing it damages in the amount of approximately $2,000,000.

In support of its contention that jurisdiction may properly be exercised over RG in New York, Burrows alleges that RG has sufficient contacts with New York since it employs a salesperson, Brunett, who lives and works out of New York for much of the year. However, although Brunett does spend time in New York from June through August, he resides in Virginia for the remainder of the year. Moreover, notwithstanding his presence in New York during the summer months, Brunett essentially works out of his Virginia office during that time by telecommunicating to his office in Virginia by cellular telephone and electronic mail. RG does not maintain an office in New York for Brunett.

Additionally, Burrows contends that RG has sold three presses to Graphic Controls, which is located in Buffalo, New York. Further, plaintiff alleges that it is standard industry practice for press refurbishers, such as defendant, to regularly send their employees to repair and maintain their refurbished presses. Defendant refutes this claim by asserting that it only sold one press to Graphic Controls and that it does not send its technicians or other employees into New York on a regular basis, but has only sent them into New York for one day visits on three occasions each in 2002, 2003, and 2004.

## III. DISCUSSION

On a Fed.R.Civ.P. 12(b)(2) motion to dismiss for lack of personal jurisdiction, the "plaintiff bears the burden of establish-

ing that the court has jurisdiction over the defendant." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir.1999) (citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir.1994)). A plaintiff may carry this burden " 'by pleading in good faith ... legally sufficient allegations of jurisdiction,' i.e., by making a 'prima facie showing' of jurisdiction." *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir.1998) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). In order to make such a showing, a plaintiff may use its "own affidavits and supporting materials, containing an averment of facts that, if credited ... would suffice to establish jurisdiction over the defendant." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir.2001) (internal citations and quotations omitted). Nevertheless, where a defendant "rebuts [a plaintiff's] unsupported allegations with direct, highly specific, testimonial evidence regarding a fact essential to jurisdiction— and [the] plaintiff[ ] do[es] not counter that evidence—the allegation may be deemed refuted." *Schottenstein v. Schottenstein*, No. 04 Civ. 5851(SAS), 2004 WL 2534155, at *4 (S.D.N.Y. Nov.8, 2004). However, when "the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." *A.I. Trade Fin. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir.1993).

■ It is well established that " '[t]he amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits, with federal law entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee.' " *Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 567 (2d Cir.1996) (quoting *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 223 (2d Cir. 1963)). When considering a motion to dismiss for lack of personal jurisdiction, the court must undertake a two-part inquiry. "First, it must determine whether the plaintiff has shown that the defendant is amenable to service of process under the forum state's laws; and second, it must assess whether the court's assertion of jurisdiction under these laws comports with the requirements of due process." *Id.* (citing *Savin v. Ranier*, 898 F.2d 304, 306 (2d Cir.1990)).

Here, in response to defendant's motion to dismiss for lack of personal jurisdiction, plaintiff relies upon New York Civil Practice and Rules ("CPLR") sections 301 and 302(a)(1) to establish that defendant is subject to jurisdiction in New York.

## A. Personal Jurisdiction—CPLR § 301

■ CPLR section 301 states that "[a] court may exercise such jurisdiction over persons ... as might have been exercised heretofore." This section has been "authoritatively construed to authorize the exercise of jurisdiction over a foreign corporation if the defendant 'does business' in New York in the *'traditional sense.'* " *Ball*, 902 F.2d at 198 (quoting *Frummer v. Hilton Hotels Int'l, Inc.*, 19 N.Y.2d 533, 536, 281 N.Y.S.2d 41, 227 N.E.2d 851 (N.Y. 1967)). This has been interpreted to allow the exercise of jurisdiction under section 301 "only when the defendant is 'engaged in such a continuous and systematic course of doing business [in New York] as to warrant a finding of its presence' in the jurisdiction." *Id.* (quoting *Simonson v. Int'l Bank*, 14 N.Y.2d 281, 285, 251 N.Y.S.2d 433, 200 N.E.2d 427 (N.Y.1964)). Merely "[o]ccasional or casual business in New York does not suffice under section 301." *Id.* The plaintiff must show that the

defendant is doing business in New York " 'with a fair measure of permanence and continuity.' " *Id.* (quoting *Laufer v. Ostrow,* 55 N.Y.2d 305, 310, 449 N.Y.S.2d 456, 434 N.E.2d 692 (N.Y.1982)).

■■■ New York courts have generally focused on the following indicia of doing business in assessing jurisdiction under this standard: "the existence of an office in New York; the solicitation of business in New York; the presence of bank accounts or other property in New York; and the presence of employees or agents in New York." *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.,* 918 F.2d 1039, 1043 (2d Cir.1990) (citing *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 58 (2d Cir.1985)). However, the " '[s]olicitation of business alone will not justify a finding of corporate presence in New York with respect to a foreign manufacturer or purveyor of services.' " *Id.* (quoting *Laufer,* 55 N.Y.2d at 310, 449 N.Y.S.2d 456, 434 N.E.2d 692). But "if the solicitation is substantial and continuous, and defendant engages in other activities of substance in the state, then personal jurisdiction may properly be found to exist." *Id.* (citing *Beacon Enters., Inc. v. Menzies,* 715 F.2d 757, 763 (2d Cir.1983)).

■■ In order to determine whether RG, a foreign corporation, is "doing business" in New York, the factors set out above must be applied. First, although plaintiff maintains that defendant employs a salesman who works out of New York, defendant does not maintain an office in New York. Second, even though defendant has solicited some business in New York, including the sale of one press to Graphic Controls, such solicitation is not continuous and systematic. Moreover, "[s]olicitation of business alone will not justify a finding of corporate presence in New York with respect to a foreign manufacturer." *Laufer,* 55 N.Y.2d at 310, 449 N.Y.S.2d 456, 434

N.E.2d 692. Third, defendant does not maintain any bank accounts or other property in New York. Finally, plaintiff makes two allegations to support a finding that defendant maintains a presence in New York through its employees. The first is that the defendant employs a salesperson, Brunett, who works out of New York. Second, plaintiff claims that defendant, in following the industry standard, has regularly sent its representatives into New York to maintain its refurbished presses. However, although Brunett does make his home in New York during the summer months, he continues to work out of his Virginia office during that time by using a Virginia based cellular telephone and electronic mail. Additionally, defendant has only sent its representatives to New York for one day visits on three occasions, once each year from 2002 through 2004. Such contacts with New York are "random, isolated, or fortuitous", not continuous and systematic. *See Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984). Therefore, the defendant does not maintain a presence in New York through its employees or agents.

Considering that RG does not maintain offices, bank accounts, or any other property in New York, and its lack of continuous and systematic contacts with New York, it cannot be said that it is "doing business" in New York "with a fair measure of permanence and continuity." *See Laufer,* 55 N.Y.2d at 310, 449 N.Y.S.2d 456, 434 N.E.2d 692. Therefore, plaintiff has failed to establish jurisdiction over the defendant pursuant to CPLR § 301.

**B.** ***Personal       Jurisdiction—CPLR § 302***

■■ Although Burrows is unable to establish general jurisdiction over RG pursuant to CPLR § 301, plaintiff also maintains that New York may exercise specific

jurisdiction over defendant. The New York long-arm statute, CPLR § 302(a)(1), states that "a court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent ... transacts any business within the state or contracts anywhere to supply goods or services in the state." In applying the long-arm statute, New York may exercise "personal jurisdiction over a nondomiciliary if two conditions are met: first, the non-domiciliary must 'transact business' within the state; second, the claim against the nondomiciliary must arise out of that business activity." *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986) (citing *McGowan v. Smith*, 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 419 N.E.2d 321 (N.Y.1981)). "A non-domiciliary 'transacts business' under CPLR § 302(a)(1) when he purposefully avails himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws." *Id.* (quotations and alterations omitted). "No single event or contact connecting defendant to the forum state need be demonstrated; rather, the totality of all defendant's contacts with the forum state must indicate that the exercise of jurisdiction would be proper." *Id.*

■■■■ The following factors must be considered in determining whether an out-of-state defendant transacts business in New York:

(I) whether the defendant has an ongoing contractual relationship with a New York corporation, (ii) whether the contract was negotiated or executed in New York, and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship, (iii) what the choice-of-law clause is in any such contract, and (iv) whether the contract requires franchisees to send no-

tices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

*Agency Rent A Car Sys. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir.1996) (internal citations omitted). "Although all are relevant, no one factor is dispositive." *Id.* This list of factors is not exhaustive, "and the ultimate determination is based on the totality of the circumstances." *Id.* Since " 'the mere existence of a contract with a New York corporation is not sufficient to constitute the transaction of business under section [302(a)(1) ] of the CPLR,' " the factors listed above must be applied in order to determine whether RG transacts business in New York. *See Pieczenik v. Cambridge Antibody Tech. Group*, No. 03 Civ. 6336(SAS), 2004 WL 527045, at *4 (S.D.N.Y. Mar.16, 2004) (quoting *Pieczenik v. Dyax Corp.*, 265 F.3d 1329, 1335 (Fed.Cir.2001)).

In considering the first factor, "New York courts ... have adopted a *prospective* analysis in determining whether an ongoing contractual relationship exists." *Schomann Int'l Corp. v. Northern Wireless, Ltd.*, 35 F.Supp.2d 205, 209 (N.D.N.Y. 1999); *see George Reiner & Co., Inc. v. Schwartz*, 41 N.Y.2d 648, 653, 394 N.Y.S.2d 844, 363 N.E.2d 551 (N.Y.1977) (four-year employment contract "contemplated and resulted in continuing relationship between [the parties]"); *China Express, Inc. v. Volpi & Son Machine Corp.*, 126 A.D.2d 239, 245, 513 N.Y.S.2d 388 (N.Y.App. Div. 1st Dep't 1987) (noting that installation and monitoring of restaurant equipment "manifestly contemplated an ongoing relationship between the parties"); *Roman v. Sunshine Ranchettes, Inc.*, 98 A.D.2d 744, 469 N.Y.S.2d 449 (N.Y.App. Div.2d Dep't 1983).

■■■■ Here, the contract at issue is the only transaction RG has ever entered into with Burrows. It required defendant to

rebuild the press in Virginia, and then to ship the rebuilt press to Burrows Packaging Group in Ohio. Defendant also provided services at Burrows' Ohio plant by having its employees supervise the unloading and installation of the press. Upon completion of these obligations, the contractual relationship between plaintiff and defendant ended. Even though plaintiff claims it is the industry standard for defendant to send its technicians to maintain and repair the press, defendant is not obligated to take such action under any contractual terms. Therefore, Burrows and RG are not engaged in an ongoing contractual relationship.

As to the second factor, Burrows maintains that the contract was negotiated after telephone and mail contact in New York. However, "telephone calls and correspondence sent into New York, by a non-domiciliary defendant who is outside New York, generally are insufficient to establish personal jurisdiction." *Int'l Customs Assocs. v. Ford Motor Co.*, 893 F.Supp. 1251, 1261 (S.D.N.Y.1995); *see Casella v. Pawley*, No. 93 Civ. 7611(MGC), 1995 WL 144848, at *3 (S.D.N.Y. Mar.31, 1995) (finding personal jurisdiction lacking where defendants' only contacts with New York consisted of telephone conversations and facsimile transmissions); *Beacon Enters.*, 715 F.2d at 766 ("New York courts have consistently refused to sustain section 302(a)(1) jurisdiction solely on the basis of defendant's communication from another locale with a party in New York.").

Furthermore, Burrows' initial contact with Brunett in New York cannot sustain jurisdiction. Although Brunett happened to be in New York when plaintiff contacted him, he was essentially in Virginia as far as plaintiff was concerned since he was contacted through his Virginia based cellular telephone. Additionally, following the execution of the contract, RG did not send

any representatives to New York for purposes of discussing its contractual relationship with plaintiff. Therefore, the second factor does not weigh in favor of a finding that defendant transacts business in New York.

The third factor, which concerns the existence of a choice-of-law clause in the contract, cannot be considered in this particular case since Burrows has failed to allege that the contract at issue contained such a provision. Therefore, this factor is neutral in deciding whether RG transacts business in New York.

In applying the fourth and final factor, consideration must be given to Burrows' primary argument that RG transacts business in New York. Plaintiff alleges, and defendant admits, that the contract required defendant to ship all bills to New York. However, the mailing of billing statements to Burrows "in New York, standing alone, does not convey jurisdiction over [RG]." *See Unlimited Care v. Visiting Nurse Ass'n*, 42 F.Supp.2d 327, 331 (S.D.N.Y.1999) (citing *Roper Starch Worldwide v. Reymer & Assocs.*, 2 F.Supp.2d 470, 475 (S.D.N.Y.1998) ("merely sending payment to New York is not sufficient to establish personal jurisdiction over a defendant.")). Here, defendant was merely sending billing statements to New York, which, similar to sending payment, is insufficient to establish personal jurisdiction. Moreover, even though defendant was contractually obligated to send its billing statements to New York, "this 'performance' of the contract alone . . . still fall[s] short of the constitutional requirements for personal jurisdiction." *See id.* (citing *Transatlantic Shiffahrtskontor GmBh v. Shanghai Foreign Trade Corp.*, 996 F.Supp. 326, 335 (S.D.N.Y.1998)). Nor was the defendant subject to supervision in New York. Any contacts defendant did have in New York were not designed to

permit it to conduct activities in New York. The contract required defendant to deliver and supervise installation of the press in Ohio, not in New York. Therefore, the final factor does not benefit plaintiff in its attempt to show that defendant is transacting business in New York.

An application of the transacting business factors weighs against a finding that RG transacts business in New York. Therefore, since defendant "did not avail [itself] of the privilege of conducting activities in New York," Burrows cannot establish jurisdiction over defendant pursuant to CPLR § 302(a)(1). *See CutCo*, 806 F.2d at 365.

### C. *Transfer of Venue*

As Burrows has failed to make out a prima facie showing of personal jurisdiction under either CPLR section 301 or 302, it is not necessary to determine whether the exercise of jurisdiction comports with federal due process. However, plaintiff does request that this action be transferred to the Eastern District of Virginia under 28 U.S.C. § 1406(a), rather than dismissing it in its entirety.

■ "The district court of a district in which [a case is filed] laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). In other words, even though a court may lack personal jurisdiction over a defendant, "it may still transfer the case to a jurisdiction where both jurisdiction and venue are proper rather than dismiss it if such transfer would be in the interests of justice." *Hatfield v. Asphalt Int'l, Inc.*, No. 03 Civ. 1372 DAB, 2004 WL 287680, at *4 (S.D.N.Y. Feb.11, 2004); *see Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962) ("The language of § 1406(a) is amply broad enough to authorize transfer of cases ... whether the court in which it was filed had personal jurisdiction over the defendants or not."). "Whether dismissal or transfer is appropriate lies within the sound discretion of the district court." *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir.1993). When exercising such discretion, due consideration should be given to the purpose behind 28 U.S.C. § 1406(a), which is "that of removing whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies on their merits." *Goldlawr*, 369 U.S. at 466–67, 82 S.Ct. 913.

■ Here, since RG is a Virginia corporation and has its principal place of business in Virginia Beach, Virginia, venue will be proper in Virginia. 28 U.S.C. § 1406(a). Furthermore, transferring this action to Virginia will serve the interests of justice. Although dismissal would not permanently bar Burrows from litigating its claims on their merits, "it would force it to spend significant time and money filing a new action in a new forum." *See Hatfield*, 2004 WL 287680, at *5. Moreover, defendant "would not be prejudiced, but would likely benefit by having the case transferred [to Virginia] ... given that their business operations, and presumably many potential witnesses and relevant documents, are based there." *See id.* Therefore, since venue is proper in Virginia, this action will be transferred to the Eastern District of Virginia in the interests of justice.

### IV. *CONCLUSION*

Burrows failed to make out a prima facie showing of personal jurisdiction under either CPLR section 301 or 302. However, rather than dismissing this action in its entirety, it is appropriate to transfer to the Eastern District of Virginia. *See* 28 U.S.C. § 1406(a).

388

Accordingly, it is

ORDERED that

1. Defendant R.G. Engineering, Inc.'s motion to dismiss for lack of personal jurisdiction in the Northern District of New York, is GRANTED; and

2. Plaintiff Burrows Paper Corporation's request to transfer venue to the Eastern District of Virginia, Norfolk Division is GRANTED.

The Clerk is directed to send the file to the Clerk of the Eastern District of Virginia, Norfolk Division, together with a copy of this Order.

IT IS SO ORDERED.