Harry EDWARDS, Plaintiff,

v.

The PULITZER PUBLISHING COMPA-
NY, William F. Woo, Tom Wheatley,
Does I–III, Defendants.

No. C–89–0551 WHO.

United States District Court,
N.D. California.

May 16, 1989.

Marvin Stender, McTernan, Stender,
Walsh & Schwartzbach and Karen N. Snell,
Riordan & Rosenthal, San Francisco, Cal.,
for plaintiff.

Robert B. Hoemeke, Lewis & Rice, St.
Louis, Mo., and John E. Carne, Crosby,

Heafey Roach & May, Oakland, Cal., for defendants.

## OPINION AND ORDER

ORRICK, District Judge.

Plaintiff, Harry Edwards, brought this suit against defendants The Pulitzer Publishing Company ("Pulitzer"), William F. Woo, and Tom Wheatley, alleging deceit, invasion of privacy, appropriation of name, and interference with prospective advantage. Defendants filed a motion to dismiss the case for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). The Court finds it has personal jurisdiction over defendants and denies defendants' motion to dismiss.

### I.

Edwards is an associate professor of sociology at the University of California at Berkeley where he is well known for his work in professional sports. He is and was a resident of California during all times pertinent to the allegations in the complaint.

Pulitzer is a Delaware corporation having its principal place of business in St. Louis, Missouri. It owns and publishes the *St. Louis Post–Dispatch* ("*Post–Dispatch*"). Neither the paper nor the corporation itself have offices for conducting business in California and neither is registered nor qualified to do business in California. The *Post–Dispatch* does not solicit subscribers in California, but does have a small circulation in California that amounts to less than one-hundredth of one percent of its total circulation.

Wheatley is employed as a reporter for the *Post–Dispatch* and resides in St. Louis, Missouri.

Woo is the Editor of the *Post–Dispatch* and resides in St. Louis, Missouri.

In the summer of 1987, Edwards alleges he received a telephone call at his office in Berkeley from Wheatley asking whether Edwards would be in St. Louis in the next month and whether he would consent to an interview. Edwards alleges he agreed to an interview with the condition that it would be tape recorded to avoid any misquotation. Edwards states that Wheatley agreed to this condition. An interview took place on July 17, 1987, at the Marriott Pavilion Hotel in St. Louis. Edwards alleges that Wheatley had a tape recorder at the interview, but only afterwards did Edwards determine that it had not been turned on.[1]

As a result of the interview, in December 1987, the *Post–Dispatch* printed an article in its sports section entitled "Ex–Radical Blossoms as Sports Guru." All the information used in the article was gathered at the interview with Edwards. Edwards has no complaints about the contents of this article.

On January 4, 1988, a second article appeared on the commentary page of the *Post–Dispatch* entitled "Blacks are Standing At the Starting Gate: Breaking Down Racist Barriers Means Nothing If Blacks Won't Help Themselves." The article appeared under the byline of Harry Edwards and it was followed by an italicized editor's note stating: "The preceding is excerpted from an interview with sports reporter Tom Wheatley." Edwards objected to this

---

**1.** Defendants contest the fact that the original telephone call was made by Wheatley and state that it was made by Michael E. Smith, an editor at the *Post–Dispatch*. In addition, defendants claim that no discussion about the use of a tape recorder took place before or at the interview. A district court has discretion to determine the mode in which it will resolve the factual disputes raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2). *Data Disc, Inc. v. Systems Technology Assocs.*, 557 F.2d 1280, 1285 (9th Cir.1977). When a court determines that it will receive only affidavits, then a plaintiff is required only to make a *prima facie* showing of jurisdictional facts through the sub-mitted materials in order to avoid a defendant's motion to dismiss. *Id.* The Ninth Circuit has held that any greater burden would allow a defendant to obtain a dismissal simply by the defendant controverting the facts alleged by the plaintiff. *Id.*

That is what defendants have done in this case. They have simply controverted the facts that plaintiff relies on as the basis for the Court's jurisdiction over defendants. Thus, plaintiff's version of the facts will be treated as true for the purposes of this motion to dismiss because plaintiff, through affidavit, has made a *prima facie* showing of these facts.

440

article and wrote to Woo, the Editor of the *Post–Dispatch*. Woo responded in a letter to Edwards at his office in Berkeley in which he stated he would "set the record straight" for the form in which the article appeared but not the content of the article. Following that letter, Woo wrote an editor's note for the *Post–Dispatch* in which he stated that the paper stood behind the accuracy of the quotations in the article. Edwards alleges that this editor's note amounted to a republication of the original harm and further harmed his reputation.

## II.

■ The issue in this case is whether or not this Court has personal jurisdiction over defendants. In diversity cases, such as this, the Court must first inquire whether the assertion of jurisdiction satisfies California state law as well as due process requirements. *Corporate Investment Business Brokers v. Melcher*, 824 F.2d 786, 787 (9th Cir.1987). Because California law confers jurisdiction coextensive with due process, the Court need only analyze whether the exercise of jurisdiction comports with due process. *Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1396 (9th Cir.1986); Cal.Code Civ.Proc. § 410.10. The general requirement of the due process clause of the Fourteenth Amendment is that the defendant must have minimum contacts with the forum state such that the suit does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

■ In response to recent Supreme Court cases,[2] the Ninth Circuit has adopted more flexible definitions of its three-prong test to analyze whether the Court may exercise specific jurisdiction over a defendant. The test is as follows: (1) the non-resident defendant must do some act or consummate some transaction within the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one that arises out of or results from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable. *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191 (9th Cir.1988).

### A.

■ In order to have purposefully availed oneself of the benefits of the forum, the defendant must have performed some type of affirmative conduct that allows or promotes the transaction of business within the forum state. *Id.* at 1195. Recent Ninth Circuit decisions have interpreted Supreme Court holdings to allow the "exercise of jurisdiction over a defendant whose only contact with the forum is the purposeful direction of a foreign act having effect in the forum state. *Haisten*, 784 F.2d at 1397.

■ Edwards argues that in this case, Wheatley placed a telephone call to him in California during which Wheatley allegedly made misrepresentations regarding the use of a tape recorder at the proposed interview that induced Edwards to agree to the interview. Edwards argues that this telephone call constitutes a purposeful direction of a foreign act having effect in the forum state and, thus, satisfies the first prong. The effect in the forum state, argues Edwards, was his reliance on the statements made in the telephone conversation that induced him to consent to the interview.

An additional act directed to the forum state can be found in the form of Woo's letter to Edwards that promised to set the record straight. Edwards argues this letter was a foreign act having effect in the forum state. Again, the effect in the forum state was Edward's expectation that the harm created by the article would be corrected. He argues that additional harm was done by republishing or reaffirming the contents of the damaging article.

**2.** *See, e.g., Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984); *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984).

The Court finds these two acts enough to support personal jurisdiction. In the recent Ninth Circuit case of *Brainerd v. Governors of the University of Alberta*, 873 F.2d 1257 (9th Cir.1989), the Court upheld jurisdiction over a defendant who received two telephone calls made from the forum state and who responded to a letter sent from the forum state. The Court observed: "It is the quality of these contacts, however, and not the quantity, that confers personal jurisdiction over a defendant." *Id.* at 1259. The Court went on to rule:

> The purposeful availment requirement, however, may also be satisfied if the defendant intentionally directed his activities into the forum. [Defendant] is alleged to have committed intentional torts. His communications were directed to Arizona, even though he did not initiate the contact. Assuming the allegations in the complaint are true, [defendant] knew the injury and harm stemming from his communications would occur in Arizona, where [plaintiff] planned to live and work. Those contacts with the forum support personal jurisdiction over [defendant] in Arizona.

*Id.* at 1260.

The Ninth Circuit based its decision on the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), which adopted the "effects" test. The Supreme Court held that when a defendant knew that its action would have a potentially devastating effect on the plaintiff, who resided in California, and the brunt of the injury would be felt in California, the defendant would be subject to California jurisdiction. *Id.* at 789–90, 104 S.Ct. 1486–88. The Supreme Court distinguished untargeted negligence with acts that were committed knowing that the plaintiff would be harmed in the forum state. *Id.*

In the present case, it was defendants who initiated the contact with plaintiff in California by means of a telephone call. This increases the significance of the contract compared to the call received in *Brainerd* because in this case defendants actually sought plaintiff in the forum state.

It was during that telephone call that plaintiff agreed to an interview based on alleged misrepresentations regarding the tape recording of the interview. The subsequent harm, if any, to plaintiff based on the article was to plaintiff's reputation. Defendants had to know that harm to one's reputation would occur in the state in which plaintiff lived and worked, just as the harm occurred in the forum state in *Brainerd*.

In addition, Woo's letter promised Edwards to set the record straight, but instead allegedly touched off additional harm by reaffirming the article. This particular contact with the forum was one step removed from actual negligence but, taken together with the telephone call, constitutes enough contact with the forum state to support jurisdiction.

Finally, the *Sinatra* Court relied in part on the fact that the defendant knew Sinatra was a California resident. The Court held that this knowledge amounted to an act that had an effect in California. In this case, clearly defendants knew Edwards was a California resident because an employee of the newspaper made the call to California to initiate the interview. This ties in with the fact that defendants knew that any harm to plaintiff's reputation would take place in California where plaintiff lived and worked.

Thus, the acts discussed above satisfy the first prong of the Ninth Circuit's test.

Defendants point to then-Judge Kennedy's decision in the Ninth Circuit case of *Church of Scientology of California v. Adams*, 584 F.2d 893, 896 (9th Cir.1978), for the proposition that the Ninth Circuit has already held that the *Post–Dispatch* does not have minimum contacts with California. In that decision, Judge Kennedy noted that the *Post–Dispatch* had less than .04 percent of its circulation in California and that only 2.91 percent of its advertising comes from California firms. In addition, the reporters who wrote the article in question in that case did not research or conduct any interviews in California. There is nothing in the record in that case showing that telephone calls were made or letters sent into California regarding the

article. Defendants argue that, based on this case, the Court should find no minimum contacts because the contacts have not changed since the decision in *Church of Scientology.*

The evidence is clear that the circulation in California has in fact decreased, but that is not the sole criteria by which this Court should determine minimum contacts. Two factors have changed that warrant a different result in this case from that in the *Church of Scientology* case. First, as discussed above, the law has become more flexible and broader since that decision was rendered over ten years ago. Second, the current case involves the following contacts that the *Church of Scientology* case did not have: (1) an employee of the *Post–Dispatch* telephoned Edwards in California to set up the interview, thus initiating the transaction that is the subject of the dispute; (2) misrepresentations allegedly were made to Edwards during the telephone call that induced him to agree to the interview; (3) the Editor wrote to Edwards at his office in California; and (4) defendants knew Edwards was a resident of California. These contacts, coupled with the *Post–Dispatch*'s circulation in California, even though minimal, satisfy the first prong of the test.

### B.

The second prong of the Ninth Circuit's test is whether the claim is one that arises out of or results from defendants' forum-related activities. There can be no dispute that the acts discussed above relate to Edwards' claim against the paper. In fact, the activity is the basis for the claim because Edwards is claiming that Wheatley's alleged misrepresentation in the telephone call was a cause of his injury because no tape recording existed to verify the substance of the interview. Therefore, this prong is satisfied.

### C.

Once a plaintiff has shown that a defendant has purposefully availed itself of the forum's benefits, as Edwards has shown here, the burden shifts to the defendants to present a compelling case that jurisdiction is unreasonable. *Sinatra,* 854

F.2d at 1198, *citing Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985). Seven factors were relied on in *Sinatra* to determine reasonableness: (1) the extent of purposeful interjection; (2) the burden on the defendant; (3) the extent of conflict with sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the suit; (5) the most efficient judicial resolution of the dispute; (6) the convenience and effectiveness of relief for the plaintiff; and (7) the existence of an alternative forum. *Sinatra,* 845 F.2d at 1198–99.

A balancing of these factors, given the presumption in plaintiff's favor, supports a finding that jurisdiction is reasonable.

The first factor weighs in plaintiff's favor because the Court has already discussed the fact that the purposeful interjection in this case is enough to satisfy the first prong of the Ninth Circuit's test.

The second factor also weighs in plaintiff's favor because the burden on defendants is minimal. Pulitzer is a large corporation that will not suffer by defending this case in California. In addition, the individual defendants are represented by Pulitzer's counsel, at least up to this stage in the case and, because the causes of action relate to their job performance, that likely will continue.

The third factor has to do with sovereignty and applies only in cases of a foreign state. *Id.* at 1199.

The fourth factor tips in favor of plaintiff because California maintains a strong interest in providing an effective means of redress for its residents who are tortiously injured. *Id.* at 1200. In this case, Edwards is a California resident who allegedly was tortiously injured.

The fifth factor, convenience and effectiveness of relief for plaintiff, strongly favors plaintiff. He is an individual who lives in California and carries a full-time teaching schedule at the University of California at Berkeley. Notwithstanding his substantial income and his frequent travel schedule, it would be a burden if he were required to litigate in Missouri.

The sixth factor is a draw between the parties. There are many witnesses for

plaintiff who are in California who will testify regarding his injury and, likewise, there are many witnesses in Missouri who will testify for defendants.

The seventh factor, whether there is an alternative forum, is uncertain but leans toward defendants. Certainly, the case can be refiled in St. Louis. Plaintiff's counsel argues that given plaintiff's resources, it is unlikely whether he could maintain a lawsuit away from home.

Balancing all these factors with the presumption owed plaintiff that jurisdiction is reasonable, the Court finds that jurisdiction is reasonable in this case. Accordingly,

IT IS HEREBY ORDERED that defendants' motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) is denied.