KARSTEN MANUFACTURING CORPORATION, An Arizona corporation, Plaintiff,

v.

UNITED STATES GOLF ASSOCIATION, A Delaware corporation, et al., Defendants.

No. CIV 89-1333 PHX PGR.

United States District Court, D. Arizona.

Jan. 11, 1990.

---

Leonard Decof, Decof & Grimm, Providence, R.I., Daniel Cracchiolo, Burch & Cracchiolo, P.A., Harry J. Cavanagh, O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A., Phoenix, Ariz., for plaintiff.

Lee Abrams, Mayer, Brown & Platt, Chicago, Ill., John J. Bouma, Janet Barton, Snell & Wilmer, Martin Galbut, Galbut & Associates, Phoenix, Ariz., Mark Levinstein, Robert Litt, Williams & Connolly, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

ROSENBLATT, District Judge.

### FACTS

Plaintiff, Karsten Manufacturing Corporation ("Karsten"), is an Arizona corporation engaged in the design, manufacture and sale of golf equipment throughout the United States ("U.S.") and the world. Karsten has been manufacturing clubs since 1959 and currently employs approximately

1,900 persons in Phoenix, Arizona. Karsten has a British affiliate, Karsten (U.K.) Ltd., located in Gainsborough, England.

Defendant, United States Golf Association ("USGA"), is a Delaware corporation with its principal place of business in Far Hills, New Jersey. The USGA has over 6,000 member golf clubs and courses throughout the U.S. and the world. Of these, 100 golf clubs and 25 courses are located in Arizona. As members, these golf clubs and courses are not required to, but most do adhere to the rules of the USGA.

Defendant, the Royal and Ancient Golf Club of St. Andrews ("R & A"), is an unincorporated association located in St. Andrews, Scotland. The R & A holds itself out as the ruling body for the game of golf in countries other than the U.S., Canada and Mexico. However, the R & A and USGA jointly formulate, copyright and publish the Rules of Golf, and work together to uniformly apply and interpret the rules worldwide.

The individual USGA defendants are past or present officers and directors of the USGA, none of whom reside in Arizona. Two of the individual R & A defendants are present officers of the R & A, and the third is a consultant member of the R & A Implements and Ball Committee. All three individual R & A defendants reside in the United Kingdom ("U.K.")

In 1942, the USGA/R & A adopted a rule requiring that the grooves on the face of a club be a "V" shape, and that the space between the grooves be at least three times the width of the groove. In 1984, the USGA/R & A adopted a new rule permitting clubs with "U" grooves, but did not specify how to measure the width of the grooves.

After this 1984 ruling, Karsten began producing and selling PING EYE2 irons with "U" grooves. These clubs have become very popular among golfers in the U.S. and around the world. According to defendants, the club's design allows the ball to spin in a way that benefits golfers of lesser ability than the very best, but not those of average or low ability. The PING EYE2 accounts for 99% of Karsten's production of irons. Moreover, Karsten sponsors more than 150 touring professional golfers in the U.S. and abroad who play with PING EYE2's.

In 1987, the USGA devised and announced a method for measuring groove width, the "30–degree method." The R & A subsequently adopted the method, which will be implemented in all championships conducted by the USGA/R & A beginning on January 1, 1990, and in all events played under the Rules of Golf beginning on January 1, 1996.

The USGA/R & A have determined that Karsten's PING EYE2 club does not conform to the Rules of Golf because distance between the grooves of the club is less than three times the width of the groove, as measured by the "30–degree method." However, the USGA/R & A have also found nonconforming clubs manufactured by other companies, and have even found that *some* PING EYE2's do conform.

\*     \*     \*     \*     \*     \*

## PROCEDURE

Karsten originally filed a complaint on August 10, 1989, naming as defendants, among others, the R & A. Karsten did not name any individual associated with the R & A in the original complaint. On August 17, 1989, without leave of court, Karsten filed an amended complaint adding the individual R & A defendants.

The complaint alleges eight counts, primarily antitrust violations. Karsten seeks damages of $100 million, trebled under the antitrust laws, and injunctive relief.

On September 18, 1989, defendant R & A and its individual defendants (the "Scottish defendants") filed a motion to dismiss for lack of personal jurisdiction and for improper service of process on the individual defendants. The individual USGA defendants also filed on September 18, 1989 a motion to dismiss for lack of personal jurisdiction. This memorandum and order is directed at the Scottish defendants' motion.

**1432**

## DISCUSSION

### SCOTTISH DEFENDANTS' MOTION TO DISMISS

The Scottish defendants seek dismissal of this action for three reasons: (1) service of process on the individual R & A defendants was improper; (2) the court lacks personal jurisdiction over the Scottish defendants; and (3) the R & A, as an unincorporated association, lacks the capacity to be sued on the state law claims set forth in Counts III–VII.

### 1. SERVICE OF PROCESS

■ The Scottish defendants argue that because Fed.R.Civ.P. 21 requires an order of the court to add parties "at any stage of the action," Karsten's First Amended Complaint was improperly filed without leave of court. Therefore, service on the individual R & A defendants was improper. 7 C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* (2d ed.1988) at 474–75.

Most courts have held that Rule 21 governs over Rule 15, and that an amendment changing parties requires leave of court even when made at a time during which Rule 15 allows it as of course. *Id.* However, the defect may be corrected and does not justify dismissal. *Id.*

### 2. PERSONAL JURISDICTION

Both parties agree that, under Fed.R. Civ.P. 4(e), Karsten must rely on Arizona's long-arm statute to assert personal jurisdiction over the Scottish defendants because no applicable federal statute authorizes service of process on a non-corporate defendant. The Arizona Supreme Court has interpreted Arizona's long-arm statute, Ariz.R.Civ.P. 4(e)(2), as extending jurisdiction to the limit permitted by the due process clause of the fourteenth amendment to the United States Constitution. *Batton v. Tennessee Farmers Mut. Ins. Co.*, 153 Ariz. 268, 270, 736 P.2d 2, 4 (1987). The parties disagree as to whether personal jurisdiction over the Scottish defendants comports with due process.

Due process requires that non-resident defendants have certain minimum contacts with the forum state so that the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The necessary contacts vary and depend upon whether the court intends to exercise general or specific jurisdiction. *See Haisten v. Grass Valley Medical Reimbursement*, 784 F.2d 1392, 1396–97 (9th Cir.1986).

Karsten does not seek to obtain general jurisdiction over the Scottish defendants, as the required level of contact with the forum state is quite high. *See id.* Rather, Karsten contends that this court may exercise specific jurisdiction over the Scottish defendants. The Ninth Circuit uses a three part test to determine whether specific jurisdiction comports with due process:

a. the nonresident defendant must purposefully direct his activities ...; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.

b. the claim must be one which arises out of or relates to the defendant's forum-related activities.

c. the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir.1987)

Karsten points out that, because the court's pretrial ruling on jurisdiction will be based solely upon a review of affidavits and written discovery materials, Karsten need make only a *prima facie* showing of jurisdictional facts to avoid the motion to dismiss. *Fields v. Sedgwick Associated Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir. 1986). Karsten further notes that if the parties present conflicting affidavits, all factual disputes are resolved in Karsten's favor. *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir.1984), *cert. denied*, 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985).

### a. Purposeful availment

■ The requirement of "purposeful availment" presumes that it is reasonable

to require a defendant who conducts business and benefits from his activities in a state to be subject to the burden of litigating in that state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985). However, a defendant need not have physical contact with the forum to be subject to its jurisdiction; the purposeful availment requirement may be satisfied if the defendant intentionally directed his activities into the forum. *Calder v. Jones*, 465 U.S. 783, 789–90, 104 S.Ct. 1482, 1486–87, 79 L.Ed.2d 804 (1984).

▪ In *Calder*, the Supreme Court distinguished *untargeted* negligence, which will not amount to purposeful availment, from intentional and allegedly tortious acts *expressly aimed* at the forum. *Id.* (emphasis added). The Court applied an "effects" test, holding that where a defendant knows its actions will have a potentially devastating effect on the plaintiff, and that the brunt of the injury caused by its actions will be felt in the forum state, defendant is subject to the jurisdiction of that state. *Id.* at 790, 104 S.Ct. at 1487.

Karsten argues that, under *Calder*, the Scottish defendants meet the purposeful availment prong of the Ninth Circuit's specific jurisdiction test. Specifically, Karsten alleges that the Scottish defendants adopted the "30–degree method," knowing it would have a potentially devastating effect on Karsten in Arizona, where the brunt of the injury caused by the ruling would be felt.

The Scottish defendants claim they have none of the minimum contacts with Arizona that traditionally have been found to support the exercise of personal jurisdiction. None of the Scottish defendants owns property, maintains offices or bank accounts, or does business in Arizona. Moreover, Karsten does not allege that any Scottish defendant took any action in Arizona related to the controversy.

The Scottish defendants argue that Karsten's attempt to base jurisdiction upon *Calder* must fail because the complaint does not establish that the Scottish defendants "purposefully directed" their activities at Arizona. Specifically, the R & A cannot enforce the "30–degree method" in Arizona or anywhere in the U.S. Furthermore, the rule applies equally to all golf club manufacturers, not just to Karsten. The Scottish defendants argue that "in short, the R & A's promulgation of a rule that applies to golfers outside North America cannot be considered purposeful activity directed at Arizona."

The Scottish defendants support this view with Ninth Circuit cases interpreting *Calder*. These decisions distinguish between intentional activity targeted at the forum state and intentional activity that merely causes injury in the forum state. *See, e.g., Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.*, 784 F.2d 1392 (9th Cir.1986) (upheld jurisdiction in California over a foreign insurance company that conducted no business in California, but whose sole purpose was to provide insurance for California doctors treating California patients); *Lake v. Lake*, 817 F.2d 1416 (9th Cir.1987) (found jurisdiction over a California attorney who tortiously obtained an ex parte order from a California court, intending to use it to obtain the aid of law enforcement officials in custody litigation in Idaho, the forum state); *Brainerd v. Governors of the University of Alberta*, 873 F.2d 1257 (9th Cir.1989) (found jurisdiction over a Canadian defendant who, by allegedly defaming plaintiff during a telephone conversation with a forum resident, "purposefully directed his activities into the forum ... for the very purpose of having their consequences felt in the forum state"). *Cf. Petrik v. Public Service Mut. Ins. Co.*, 879 F.2d 682 (9th Cir.1989) (lack of personal jurisdiction over a New York insurer that did no business in Montana, but failed to investigate or settle in good faith Montana plaintiff's claim).

▪ As the Scottish defendants point out, the insurer in *Petrik* knew that failing to settle a claim brought by a Montana resident would cause injury to the plaintiff in Montana. Likewise, the Scottish defendants arguably knew that the "30–degree method" would cause injury to Karsten in Arizona. However, foreseeability of injury

alone is not sufficient to obtain personal jurisdiction over a defendant who did not purposefully direct its activities at the forum state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985).

Karsten also argues that jurisdiction is proper because of an alleged conspiracy between the USGA and R & A. Karsten cites only one California case for this theory, *Maricopa County v. American Petrofina, Inc.,* 322 F.Supp. 467 (N.D.Cal.1971). However, as the Scottish defendants point out, subsequent cases have rejected this conspiracy theory of jurisdiction. Specifically, the very same district court that decided *American Petrofina* rejected the theory five years later in *Kipperman v. McCone,* 422 F.Supp. 860 (N.D.Cal.1976). The court stated:

> Contrary to plaintiff's assertion that personal jurisdiction over alleged co-conspirators may be acquired vicariously through the forum-related conduct of any single conspirator, the Court believes that personal jurisdiction over any nonresident individual must be premised upon forum-related acts personally committed by the individual. Imputed conduct is a connection too tenuous to warrant the exercise of personal jurisdiction. The Supreme Court has labelled "frivolous albeit ingenious" ... the theory of vicarious venue for alleged conspirators. That much more frivolous is the contention that personal jurisdiction, the exercise of which is governed by strict constitutional standards, may depend upon the imputed conduct of a co-conspirator.

*Id.* at 873 n. 14 (citations omitted).

The Ninth Circuit also rejected the conspiracy theory of venue in *Piedmont Label Co. v. Sun Garden Packing Co.,* 598 F.2d 491, 492 (9th Cir.1979). Moreover, the U.S. Supreme Court has held that an individual's connection with the forum state must be examined independently to determine jurisdiction. *Calder v. Jones,* 465 U.S. 783, 790, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804 (1984).

### b. Claim's relation to forum-related activities

The second part of the Ninth Circuit's three part test for specific jurisdiction requires that the litigation arise out of or relate to the defendant's forum-related activities. *Lake v. Lake,* 817 F.2d 1416, 1421 (9th Cir.1987). This step explores the relationship between the injury and the defendant's acts "identified as creating *purposeful* contacts with the forum state." *Id.* (emphasis added). Thus, even if the Scottish defendants purposefully directed their activities at Karsten in Arizona, Karsten must show that the cause of action arose out of the Scottish defendants' purposeful contacts with Arizona. The Scottish defendants did not address this second step in their motion, instead merging the purposeful contacts and forum related activities arguments.

Although the R & A cannot enforce the "30–degree method" in the U.S., its adoption of the rule arguably impacts Karsten's sales to golfers who will be unable to compete in foreign events with PING EYE2 clubs. However, even if the Scottish defendants' adoption of the "30–degree method" is a purposeful contact with Arizona, jurisdiction still may not comport with due process if it is unreasonable.

\* \* \* \* \* \*

### c. Jurisdiction must be reasonable

■ Assertion of personal jurisdiction still may violate due process if it is unreasonable in that it "offends traditional notions of fair play and substantial justice." *International Shoe v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

Once purposeful availment has been established, the court's exercise of jurisdiction is presumptively reasonable. *Corporate Investment Business Brokers v Melcher,* 824 F.2d 786, 790 (9th Cir.1987). Defendant's "must present a compelling case" that jurisdiction would be unreasonable to rebut the presumption. *Id.* (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985)).

The Ninth Circuit examines seven factors to determine the reasonableness of jurisdiction:

(1) the burden on the defendant, (2) existence of an alternative forum, (3) convenient and effective relief for the plaintiff, (4) the forum state's interest in adjudicating the suit, (5) efficient resolution of the controversy, (6) purposeful interjection, and (7) conflicts with sovereignty.

*Lake v. Lake,* 817 F.2d 1416, 1422 (9th Cir.1987).

### 1. Burden on defendant

Although the Ninth Circuit balances the burden on the defendant against the burden on the plaintiff, *Brand v. Menlove Dodge,* 796 F.2d 1070, 1075 (9th Cir.1986), the primary concern is for the defendant's burden. *FDIC v. British American Inc. Co.,* 828 F.2d 1439, 1444 (9th Cir.1987). This is because the law of personal jurisdiction is asymmetrical. *Insurance Co. of North America v. Marina Salina Cruz,* 649 F.2d 1266, 1272 (9th Cir.1981). The *Marina* court stated:

If the burdens of trial are too great for a plaintiff, the plaintiff can decide not to sue or, perhaps, to sue elsewhere. A defendant has no such luxury.

*Id.*

Karsten argues that modern advances in transportation and communications make it less burdensome for the Scottish defendants to defend themselves in Arizona. However, the same reasoning applies to the potential burden on Karsten if it is forced to bring suit in the U.K. Karsten is a profitable corporation with a British affiliate. The R & A is an unincorporated non-profit association and its individual defendants would be required to defend themselves thousands of miles from their homes.

The U.S. Supreme Court has recognized the unique burdens placed upon defendants forced to defend in a foreign legal system, stating that such burdens "should have *significant* weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Indus. Co. v. Superior Ct.,* 480 U.S. 102, 114, 107 S.Ct. 1026, 1034, 94 L.Ed.2d 92 (1987) (emphasis added). This view tends to tip the scale of relative burdens in favor of the Scottish defendants.

### 2. Existence of an alternative forum

Karsten bears the burden of proving the unavailability of an alternative forum. *Insurance Co. of North America,* 649 F.2d at 1273. Karsten concludes that "for expense and logistical reasons, Scotland is not an alternative forum." However, the fact that principal witnesses live in the U.S. does not preclude the U.K. as an alternative forum. If it did, then Arizona would not be a viable forum either because principal witnesses live in the U.K. Although both forums present inconveniences, they are certainly alternatives. Karsten has not met its burden of proof.

### 3. Convenient and effective relief for plaintiff

While allowing Karsten to litigate this claim in Arizona certainly would be more convenient, the Scottish defendants argue that their absence from the suit would have little impact. They assert that, not only is Karsten's principal grievance against the USGA for actions impacting U.S. sales, but the court's ability to enforce an order against the R & A is questionable. *Timberlane Lumber Co. v. Bank of America, N.T. & S.A.,* 549 F.2d 597, 610 (9th Cir. 1977), *cert. denied,* 472 U.S. 1032, 105 S.Ct. 3514, 87 L.Ed.2d 643 (1985) ("We should not impute to Congress an intent to punish all whom its courts can catch, for conduct which has no consequences within the United States."). Furthermore, as Karsten points out, the English courts will not enforce American antitrust laws. *Laker Airways, Limited v. Pan American World Airways,* 577 F.Supp. 348, 353 (D.D.C. 1983).

The Scottish defendants argue that the U.K. would provide Karsten the most effective relief because the U.K. is a member of the European Common Market and can award damages or issue injunctions under the antitrust laws of the European Economic Community ("EEC"). Thus, the

problem of enforcement would not exist in the U.K.

#### 4. Interest of the forum state

Arizona certainly has a strong interest in protecting Karsten from tortious actions of foreign defendants and in providing a forum for relief. *Brainerd v. Governors of the University of Alberta,* 873 F.2d 1257, 1260 (9th Cir.1989). However, this interest arguably is not as strong in Karsten's case. Karsten does business throughout the world, and is probably financially able to protect its interests, at least in the U.K.

#### 5. Efficient resolution of the controversy

For the reasons discussed under factors 1 and 3 (burden on defendant and convenient/effective relief for plaintiff), the U.K. would provide the most efficient resolution of this controversy.

#### 6. Purposeful interjection

This factor is closely tied to the issue of purposeful availment analyzed above. Thus, this factor weighs against exercising jurisdiction over the Scottish defendants.

#### 7. Conflicts with sovereignty

The Scottish defendants argue that the Ninth Circuit repeatedly has given greater weight to this factor where the defendant is a resident of a foreign nation rather than of another state. *Pacific Atlantic Trading Co. v. M/V Main Express,* 758 F.2d 1325, 1330 (9th Cir.1985); *Insurance Co. of North America,* 649 F.2d at 1272. Furthermore, the British government has expressed hostility to the applicability of American antitrust law to British subjects, both in this case in its Amicus Curiae brief, and in other cases generally. *See, e.g., Laker Airways Ltd. v. Pan American World Airways,* 559 F.Supp. 1124, 1136 (D.D.C.1983), *aff'd,* 731 F.2d 909 (D.C.Cir. 1984).

Karsten asserts that, because the R & A has established a longstanding relationship with the U.S., sovereignty considerations are "overshadowed." Considering the great weight given this factor by the Ninth Circuit, Karsten's argument is weak.

In conclusion, under the Ninth Circuit's three part test, subjecting the Scottish defendants to the specific jurisdiction of this court would not comport with due process.

### 3. CAPACITY TO BE SUED

■ The Scottish defendants' final reason for seeking dismissal is that, as an unincorporated association, the R & A lacks the capacity to be sued on the state law claims set forth in Counts III–VII.

Because the R & A is an unincorporated association, Fed.R.Civ.P. 17(b) governs its amenability to suit. This rule provides in part that:

> capacity to sue or be sued shall be determined by the law of the state in which the district court is held, except (1) that a partnership or other unincorporated associated, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States....

The R & A concedes amenability to suit on Karsten's federal claims, but disputes the same with regard to the state claims.

Arizona follows the "well-established rule" that, absent statutory authority, "an unincorporated association ... cannot sue or be sued in the organization's own name [because] such an association ... has no legal entity distinct from that of its members." *Associated Students of the University of Arizona v. Arizona Board of Regents,* 120 Ariz. 100, 102, 584 P.2d 564, 566 (1978), *cert. denied,* 440 U.S. 913, 99 S.Ct. 1226, 59 L.Ed.2d 462 (1979). The *Associated Students* court qualified this rule, however, by stating that an express statutory provision is not necessary if a statute implicitly recognizes an unincorporated associated as a legal entity. *Id.*

Karsten incorrectly argues that the *Associated Students* court failed to consider Ariz.R.Civ.P. 4(d)(6) when applying the rule that a legal entity can be expressly or implicitly recognized by statute. In that case, plaintiff cited Rule 4(d)(6), but the court found no statutory authorization for granting legal capacity.

Because Ariz.R.Civ.P. 4(e)(2) is similar to Rule 4(d)(6), we can infer that it too fails to

grant legal status to unincorporated associations. Both Rule 4(d)(6) and 4(e)(2) do no more than provide a method of serving process when an unincorporated association is otherwise "subject to suit." Thus, the R & A lacks the capacity to be sued on the state law claims.

## CONCLUSION

Karsten has not established that the Scottish defendants purposefully availed themselves of the privilege of conducting activities in Arizona. Moreover, this court cannot reasonably subject the Scottish defendants to its jurisdiction under the seven factors considered by the Ninth Circuit. Therefore, this court's exercise of jurisdiction over the Scottish defendants would not comport with due process.

## ORDER

IT IS ORDERED granting defendant R & A and its individual defendants' Motion to Dismiss For Lack of Personal Jurisdiction.