876 P.2d 1291

**Stephen M. SHAW, Plaintiff–Appellant,**

v.

**NORTH AMERICAN TITLE CO., and Does 1–50, Defendants–Appellees.**

**No. 17161.**

Supreme Court of Hawaiʻi.

July 7, 1994.

As Amended July 12, 1994.

Stephen M. Shaw, pro se.

Andrew S. Winer (Steven H. Aden, with him on the brief, of Jervis & Werner), Kailua, for defendant-appellee North American Title Co.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

MOON, Chief Justice.

Plaintiff-appellant Stephen M. Shaw appeals from the First Circuit Court's dismissal of his complaint for lack of personal jurisdiction. Because we find that Shaw's complaint, together with the affidavits presented on the motion to dismiss, create a *prima facie* showing of personal jurisdiction, we vacate the circuit court's dismissal and remand for further proceedings.

## I. FACTUAL BACKGROUND

This case arises from an escrow transaction for the refinancing of Shaw's property located in La Jolla, California. Defendant-appellee North American Title Company (NATCO) was retained by San Clemente Savings Bank to provide escrow services and title insurance. Shaw is a Hawai'i resident; NATCO is a California corporation and is not registered to do business in Hawai'i nor does it service Hawai'i properties.

Upon closing of the refinancing, NATCO had issued several checks on its Union Bank account, which included Shaw's escrow account. Although the checks were made pay-

able to Shaw's creditors, NATCO, pursuant to Shaw's instructions, mailed the checks directly to Shaw in Hawai'i.

Meanwhile, Shaw was in the midst of negotiating with his creditors in an effort to improve his credit rating. Shaw had contested items on his credit reports and was negotiating lump sum payments to creditors in exchange for deletion of negative entries from credit bureau files. Shaw alleges that he had planned to use the proceeds from the California refinancing in dealing with his creditors. Shaw claims that he specifically advised NATCO that positive credit entries on his Hawai'i credit report were necessary because of an upcoming refinancing transaction related to a property on Kaua'i. Shaw also claims that he repeatedly explained to NATCO his reasons for requesting that the checks be sent to him rather than directly to his creditors.

Two months after the checks were issued to Shaw, NATCO transferred its Union Bank account to Imperial Bank in San Francisco without notifying Shaw. As a result, the checks in Shaw's possession apparently became worthless. Shaw kept the checks for approximately a year before forwarding one of them to a bank in Ohio to settle his account. That check was dishonored. Once being notified of the invalid check, NATCO reissued new checks on its Imperial Bank account and sent them directly to Shaw's creditors, apparently countermanding Shaw's instructions. As a result, Shaw alleges that he suffered damages to his credit rating because his ability to negotiate payment with his creditors in exchange for deletion of negative entries in his credit reports was foreclosed. Shaw also complains that NATCO refused to perform a satisfactory accounting, including providing him with a list of those creditors NATCO paid directly and identifying all checks and amounts paid from Shaw's escrow account.

Shaw filed his first amended complaint on February 25, 1993, asserting eleven causes of action against NATCO and various Doe defendants. As to NATCO, he alleged: (1) fraud or deceit based on suppression or concealment of facts; (2) negligent misrepresentation; (3) breach of fiduciary duty; (4) malicious breach of agreement and breach of implied covenant of good faith and fair dealing; (5) intentional interference with economic advantage; (6) negligent and intentional infliction of emotional distress; and (7) negligent supervision or hiring of employees. He sought general, special, and punitive damages and an accounting.

On March 31, 1993, NATCO filed a motion to dismiss for lack of personal jurisdiction, pursuant to Rule 12(b)(2) of the Hawai'i Rules of Civil Procedure (HRCP). The circuit court granted the motion on May 11, 1993, and Shaw timely appealed.

## II. *DISCUSSION*

■ The question presented here is whether, under the facts alleged by Shaw, Hawai'i's courts may assert personal jurisdiction over NATCO, a nonresident defendant. A trial court's determination to exercise personal jurisdiction is a question of law reviewable *de novo* when the underlying facts are undisputed. *Bourassa v. Desrochers,* 938 F.2d 1056, 1057 (9th Cir.1991).

■ Pursuant to HRCP 12(b)(2) (1990), "the following defenses may at the option of the pleader be made by motion ... (2) lack of jurisdiction over the person[.]" Where personal jurisdiction is at issue, "[w]e look to the allegations [of the complaint] to determine jurisdiction[.]" *Kailieha v. Hayes,* 56 Haw. 306 n. 1, 536 P.2d 568 n. 1 (1975). However, the manner in which the court should view and weigh the allegations in the complaint is not clearly addressed in *Kailieha* or any other Hawai'i case. Therefore, we look to federal sources for guidance. Because HRCP 12(b)(2) is identical to Rule 12(b)(2) of the Federal Rules of Civil Procedure (FRCP), the interpretation of this rule by federal courts is highly persuasive. *Harada v. Burns,* 50 Haw. 528, 532, 445 P.2d 376, 380 (1968); *Schubert v. Saluni,* 9 Haw.App. 591, 597–99, 855 P.2d 858, 862 (1993). In

determining personal jurisdiction, "the [trial] court has discretion to proceed either upon written submissions or through a full evidentiary hearing."[1] 2A J. Moore, J. Lucas & G. Grotheer, *Moore's Federal Practice* ¶ 12.-07[2.-2] at 12-69-70 (2d ed. 1993) [hereinafter Moore's].

> If the district court chooses not to conduct a full-blown evidentiary hearing on a pretrial motion to dismiss for lack of personal jurisdiction, plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials, even though plaintiff eventually must establish jurisdiction by a preponderance of the evidence either at a pretrial evidentiary hearing or at trial and, before the hearing is held, a prima facie showing suffices notwithstanding any controverting presentation by the moving party to defeat the motion.

*Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981) (citations omitted). Here, because the circuit court proceeded to review the motion to dismiss upon written submissions, "all of [Shaw's] allegations are presumed true and all factual disputes are decided in [his] favor." *Id.;*[2] *see also Shasta Beverages*, 691 F.Supp. at 1277 ("the court looks to the uncontroverted allegations of the complaint, affidavit and depositions").

■ In order to defeat NATCO's motion to dismiss for lack of personal jurisdiction, Shaw need make only a *prima facie* showing that: (1) NATCO's activities in Hawai'i fall into a category specified by Hawai'i's long-arm statute, Hawai'i Revised Statutes (HRS) § 634-35; and (2) the application of HRS § 634-35 comports with due process. *Cowan v. First Ins. Co. of Hawai'i*, 61 Haw. 644, 649, 608 P.2d 394, 399 (1980); *Cf.* Moore's,

*supra,* ¶ 4.41-1[4] at 4-335-36; *Pure, Ltd. v. Shasta Beverages, Inc.*, 691 F.Supp. 1274, 1277-79 (D.Haw.1988).

### A. Hawai'i's Long-Arm Statute, HRS § 634-35

In order to validly exercise personal jurisdiction over NATCO, we must first determine whether NATCO's activities fall into a category specified by Hawai'i's long-arm statute, which provides in relevant part:

> (a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person ... to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of the acts:
>
> (1) The *transaction of any business within this State;*
>
> (2) The *commission of a tortious act within this State;*
>
> . . . .
>
> (c) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over the defendant is based upon this section.

HRS § 634-35 (emphasis added).

### 1. Was NATCO "transacting business" in Hawai'i pursuant to HRS § 634-35(a)(1)?

■ Whether a nonresident transacted business "demands an examination of all of the defendant['s] activities within the forum related to the present cause of action." *Cowan*, 61 Haw. at 652, 608 P.2d at 400. The dispute in *Cowan* arose out of a brokerage

---

1. "Because there is no statutory method for resolving this issue [*i.e.* a motion to dismiss for lack of personal jurisdiction], the mode of its determination is left to the trial court." *Data Disc, Inc. v. Systems Tech. Assocs.*, 557 F.2d 1280, 1285 (9th Cir.1977) (citing *Gibbs v. Buck*, 307 U.S. 66, 71-72, 59 S.Ct. 725, 729, 83 L.Ed. 1111 (1939)).

2. "[A]ny greater burden would allow a defendant to obtain a dismissal simply by the defendant controverting the facts alleged by the plaintiff. ... Thus, plaintiff's version of the facts will be treated as true." *Edwards v. Pulitzer Pub. Co.*, 716 F.Supp. 438, 439 n. 1 (N.D.Cal.1989) (citing *Data Disc, Inc. v. Systems Technology Assocs.*, 557 F.2d 1280, 1285 (9th Cir.1977)).

contract to list plaintiff's sailboat. The defendant broker asserted that, because the contract became binding in California, no business was transacted in Hawai'i. This court disagreed. We recognized that physical presence in the forum state is not necessary for a finding of "transacting business." *Id.* at 651, 608 P.2d at 400. In analyzing the defendant's activities in Hawai'i, we noted that the defendant: (1) entered into two listing contracts with Hawai'i residents involving a sailboat located in Hawai'i; (2) mailed documents to Hawai'i (signed by plaintiff in Hawai'i); and (3) solicited customers in Hawai'i by regular advertising in national magazines. Thus, we concluded that the defendant had "transacted business" in Hawai'i. *Id.* at 654, 608 P.2d at 401.

NATCO maintains that it did not transact business in Hawai'i. In distinguishing *Cowan,* NATCO emphasizes that there is no contract in evidence between Shaw and NATCO. As previously stated, NATCO was retained by San Clemente Savings Bank to provide title insurance and perform escrow services for the transaction on Shaw's California property. Shaw was not a party to the agreement between NATCO and the bank. NATCO also maintains that its contacts with Hawai'i were administrative in nature, limited to mailing checks to Shaw and related communications (*e.g.,* correspondence, telephone calls, and facsimile transmissions) with Shaw or his wife. NATCO asserts that these incidental contacts cannot reasonably be construed as "transacting business" in Hawai'i. NATCO emphasizes that: (1) it is not registered to do business in Hawai'i; (2) owns no property in Hawai'i; and (3) has not solicited business in Hawai'i.

This court noted in *Cowan* that "[w]here one alleges jurisdiction over a nonresident defendant pursuant to Hawaii's long-arm statute, HRS § 634–35(c) requires that the cause of action relate to the defendant's contacts in Hawaii." *Cowan,* 61 Haw. at 652 n. 7, 608 P.2d at 400 n. 7.

■ After a careful reading of the allegations in Shaw's complaint, we find nothing

that can reasonably be construed as "transacting business" in Hawai'i. Paragraph 9 of the complaint alleges that NATCO agreed to issue checks payable to Shaw's creditors and gave the checks to Shaw; paragraph 12 alleges that NATCO (and various Doe defendants) failed to disclose information to Shaw; paragraphs 26 and 27 allege a breach of fiduciary duty; and paragraphs 49 through 55 allege interference with economic advantage. Further, we note that nowhere in the complaint is there any allegation of solicitation of business by NATCO in Hawai'i.

■ In his affidavit, filed in opposition to the motion to dismiss, Shaw attests to signing escrow documents in Hawai'i, receiving facsimile transmissions and telephone calls as well as receiving and signing checks in Hawai'i. We conclude, however, that these dealings, based on a California contract, were merely incidental to the escrow transaction conducted in California. Moreover, the subject property was located in California, and the escrow contract was between California residents. Thus, Shaw's affidavit also fails to establish a *prima facie* showing that NATCO transacted business in Hawai'i.

Shaw cites two Ninth Circuit cases, purportedly supporting his position. *See Jones Enterprises v. Atlas Service Corp.,* 442 F.2d 1136 (9th Cir.1971); *Duple Motor Bodies, Ltd. v. Hollingsworth,* 417 F.2d 231 (9th Cir. 1969). Indeed, *Duple Motor,* a products liability case, did construe Hawai'i's long-arm statute and is relevant to issues pertaining to "[t]he commission of a tortious act within this State" and due process, which we discuss *infra;* however, *Duple Motor* has nothing to do with the issue relating to "transaction of business." *Jones Enterprises* involved Alaska's long-arm statute but also did not focus on the issue of transacting business. The analysis dealt primarily with minimum contacts within the state in analyzing the due process issue.

We hold that, even assuming the truth of Shaw's complaint and affidavit, Shaw has not demonstrated that NATCO was "transacting business" in Hawai'i.

## 2. Did NATCO commit a "tortious act" in Hawai'i pursuant to HRS § 634–35(a)(2)?

■ "A tort is committed where the injury occurs, and the phrase 'tortious act' [in HRS § 634–35(a)(2) ] encompasses the injurious consequences of an act." *Kailieha*, 56 Haw. at 307, 536 P.2d at 569 (citing *Duple Motor* ).

In *Kailieha*, plaintiff, a Hawai'i resident, sought jurisdiction over a Virginia doctor who had treated one Linda Bishop, also a Hawai'i resident, while Bishop was visiting in Virginia. Subsequent to returning to Hawai'i, Bishop was involved in an automobile accident when she lost consciousness while driving and collided into plaintiff's vehicle. In his complaint, plaintiff alleged that the nonresident doctor was negligent in diagnosing Bishop's illness and in prescribing medication to her. This court ruled that, because the injury resulted in Hawai'i, the "tortious act" element of Hawai'i's long-arm statute was satisfied. *Id.* The plaintiff, however, failed to satisfy the second part of the two-step analysis, that is, due process.

Here, Shaw's complaint alleges both negligent and intentional torts on the part of NATCO (and other Doe defendants) resulting in damages to his credit rating as well as emotional distress. Shaw's affidavit states that "[a]s a result of NATCO's actions ... I still have negative credit reports in Hawaii.... Further, my computations show NATCO may owe us money out of the escrow." Shaw also produced letters from an Ohio bank and Citibank VISA discussing Shaw's efforts to delete negative reports from his credit bureau files.

■ However, NATCO argues that Shaw failed to present documentary evidence of specific actual harm to his economic interests, business reputation or credit rating (the "injury" element of tortious injury). Nevertheless, the issue whether Shaw has sufficient evidence to support his claim for damages should be determined on summary judgment or at trial.[3]

NATCO cites several cases from other jurisdictions where courts have construed the language "tortious act" in their respective long-arm statutes more narrowly than have Hawai'i courts. *Compare Security Nat'l Bank v. UBEX Corp., Ltd.*, 404 F.Supp. 471, 473 (S.D.N.Y.1975) ("[t]hat the alleged tort ... may have been completed or 'came to rest' in New York will not confer jurisdiction unless the acts or omissions complained of also occurred in New York" (citations omitted) (New York long-arm statute)) *and State ex rel. Bank of Gering v. Schoenlaub*, 540 S.W.2d 31, 35 (Mo.1976) ("everything [defendant] did ... was done in the State of Nebraska") (Missouri long-arm statute)) *with Kailieha*, 56 Haw. at 307, 536 P.2d at 569 ("[a] tort is committed where the injury occurs") *and Duple Motor*, 417 F.2d at 234 ("negligent manufacturing [of a product] outside the state, resulting in injury in Hawaii, constituted commission of a tortious act within Hawaii").

Because *Kailieha* is directly on point, we reject the contrary holdings of cases from other jurisdictions. We therefore hold that Shaw has sufficiently alleged a *prima facie* case that NATCO committed a "tortious act within this state" for purposes of HRS § 634–35(a)(2).

### B. *Jurisdictional Due Process Requirement*

■ Having decided that Shaw has satisfied the requirements of our long-arm statute, we next examine whether the assertion of jurisdiction over NATCO under HRS § 634–35(a) comports with principles of due process of law. Due process requires that a nonresident defendant have sufficient "minimum contacts" with the forum state "such

---

**3.** NATCO also emphasizes that Shaw caused his own problems by holding onto the checks for a year. But, regardless of Shaw's alleged contributory negligence, a determination of liability is premature at the motion to dismiss stage of the proceedings. *See* Moore's, ¶ 12.07[2.–2] at 12–68–77.

that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (citation omitted). " '[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)). The determining inquiry is whether " 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.' " *Id.* at 474, 105 S.Ct. at 2183 (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)). There is no "talismanic jurisdictional formula" and the court weighs each case on its facts. *Id.* at 485–86, 105 S.Ct. at 2189 (citation omitted).

 Shaw argues that NATCO's transaction had a substantial connection with Hawai'i; it was not a chance encounter. He contends that: (1) the case involves intentional torts; (2) NATCO's actions involved voluntary interstate economic activity directed at him; and (3) the effect of NATCO's alleged tortious activity was felt in Hawai'i. Shaw emphasizes that a single contact with a forum suffices for due process. *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *Jones Enterprises,* 442 F.2d at 1139 ("very little indeed in addition to impact in the state is required to satisfy due process"). NATCO,

Shaw argues, could have reasonably foreseen that injury to him would have occurred when it mailed checks to him and then, two months later, without notice to him, removed the funds from its account. He notes Hawai'i's manifest interest in providing a means of redress against nonresident tortfeasors.

In opposition, NATCO argues that it did not "purposefully avail itself" of Hawai'i business and could not have anticipated being haled into a Hawai'i court. NATCO submits that, because of its limited nexus with Hawai'i, permitting this action offends "traditional notions of fair play and substantial justice." Relying on language from *Burger King,* wherein the United States Supreme Court rejected the notion that "an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts," 471 U.S. at 478, 105 S.Ct. at 2185 (emphasis in original), NATCO submits that the court should look to "continuing relationships and obligations," *id.* at 473, 105 S.Ct. at 2182,[4] which are lacking in this case.[5]

 We note that a line of cases arising out of *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), endorses an "effects" test of jurisdiction in situations involving tortious acts. Under this theory, asserting jurisdiction against nonresident defendants who commit torts directed at a forum state with the intention of causing instate "effects" satisfies due process. *Id.* at 787 & n. 6, 104 S.Ct. at 1485–86 & n. 6.

In *Calder,* California courts asserted jurisdiction over Florida residents, who were the editor and authors of an allegedly libelous article about a California resident. The article was written in Florida and published in the National Enquirer. Jurisdiction over the

---

4. In *Burger King,* the Court stated: "[A]nd with respect to interstate contractual obligations, we have emphasized that parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *Id.* 471 U.S. at 473, 105 S.Ct. at 2182 (citation omitted) (internal quotation marks omitted).

5. In arguing that mere communication with a forum in the course of administering a contract is insufficient, NATCO also cites cases from negotiable instrument contexts. *See Uible v. Landstreet,* 392 F.2d 467 (5th Cir.1968) (Florida long-arm statute); *Odell v. Signer,* 169 So.2d 851 (Fla.App.1964), *cert. discharged,* 176 So.2d 94 (1965). However, the findings of no jurisdiction in each case relied on interpretations of Florida's long-arm statute—not on due process grounds.

publisher or distributor was not at issue. The Supreme Court held that jurisdiction over the editor and authors was proper because, allegedly, their intentional conduct in Florida was calculated to cause injury in California. The Court reasoned:

> Jurisdiction over [the defendants] is ... proper in California based on the "effects" of their Florida conduct in California.... [The defendants] are not charged with mere untargeted negligence. Rather, their intentional, and allegedly tortious, actions were expressly aimed at California. [The defendants] knew [their article] would have a potentially devastating impact upon [the plaintiff]. And they knew that the brunt of that injury would be felt [in California].... An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California.

*Id.* at 789–90, 104 S.Ct. at 1486–87 (citations omitted).

Since *Calder,* the "effects" test of personal jurisdiction has been analyzed and refined. *Compare Brainerd v. Governors of the University of Alberta,* 873 F.2d 1257 (9th Cir. 1989) (assertion of jurisdiction comports with due process) *with Karsten Mfg. Corp. v. U.S. Golf Ass'n,* 728 F.Supp. 1429 (D.Ariz.1990) (no jurisdiction).

The plaintiff in *Brainerd* was a University of Arizona professor, who earlier had a position at the University of Alberta in Canada. While at Alberta, a dispute arose between the plaintiff and the University over plaintiff's alleged misuse of grant funds. The parties entered into a settlement agreement whereby plaintiff would resign from the University in exchange for an agreed-upon reference. The plaintiff later obtained a tenured position in Arizona. As a result of rumors regarding plaintiff's departure from Alberta, an official from the University of Arizona contacted the defendant, a university administrator in Alberta. Allegedly, the defendant violated the settlement agreement by advising the official of the accusation that plaintiff had misused university grant funds while at Alberta.

The plaintiff in *Brainerd* subsequently filed suit for breach of contract, breach of the covenant of good faith and fair dealing, defamation, and tortious interference with contractual relations. The Ninth Circuit held that Arizona courts could assert jurisdiction over the Canadian resident whose contacts with Arizona were limited to two telephone calls and a letter. The court reasoned that

> [t]he purposeful availment requirement [of due process] may ... be satisfied if the defendant intentionally directed his activities into the forum. [the defendant] is alleged to have committed intentional torts. His communications were directed to Arizona, even though he did not initiate the contact. Assuming the allegations in the complaint are true, [the defendant] knew the injury and harm stemming from his communications would occur in Arizona, where [the plaintiff] planned to live and work. Those contacts with the forum support personal jurisdiction over [the defendant] in Arizona.

*Id.* at 1259 (citing *Calder*) (other citation omitted); *see also Edwards v. Pulitzer Pub. Co.,* 716 F.Supp. 438, 440 (N.D.Cal.1989) (telephone call from nonresident is sufficient contact where forum resident relied on misrepresentation made during the call).

Arguably, *Calder* and *Brainerd* could be limited to the defamation context in which the communication itself is tortious. However, *Brainerd,* as in this case, also involved a breach of contract. Further, courts have also recognized the "effects" test outside the defamation context. *See, e.g., Rivera v. Bank One,* 145 F.R.D. 614 (D.P.R.1993) (suit for damages to credit rating against Bank for allegedly refusing to correct false information on credit report); *Classic Auto Sales, Inc. v. Schocket,* 832 P.2d 233 (Colo.1992) (misrepresentation); *Trump v. District Court,* 857 P.2d 740 (Nev.1993) (intentional interference with contract). Other cases, however, have acknowledged the test, but have determined that it was not applicable.

*See e.g., Casualty Assur. Risk Ins. Broker-age Co. v. Dillon,* 976 F.2d 596 (9th Cir.1992); *Chi Shun Hua Steel Co. v. Novelly,* 759 F.Supp. 595 (N.D.Cal.1991); *Karsten, supra.*

The court in *Karsten* recognized the evolving *Calder* "effects" test and drew important distinctions. *Karsten* involved an Arizona golf club manufacturer's assertion of jurisdiction over Scottish defendants who purportedly formulate, copyright, and interpret the rules of golf worldwide. *Karsten,* 728 F.Supp. at 1431. The *Karsten* court stressed from *Calder* that *"untargeted* negligence . . . [would] not amount to purposeful availment . . . [whereas] tortious acts *expressly aimed* at the forum [would]." 728 F.Supp. at 1433 (emphasis in original). The court distinguished cases involving intentional activities "targeted at the forum state," in which jurisdiction is proper, from those involving "intentional activity that merely causes injury in the forum state," in which jurisdiction is not proper. *Id.* The court emphasized that "foreseeability of injury *alone* is not sufficient." *Id.* at 1433–34 (citing *Burger King*) (emphasis added). Applying these distinctions, the court held that jurisdiction was not proper because any injury the Scottish defendants might have caused was not targeted at Arizona, but rather was uniformly felt worldwide. *Id.*

Shaw's intentional tort allegations are significant. Applying the "effects" test here and assuming the truth of his complaint and affidavit, Shaw has demonstrated that: (1) NATCO "targeted" Shaw in Hawai'i when it allegedly committed fraud and misrepresentation by agreeing to forward his creditors' checks to him and then, without giving Shaw notice, closed his trust account only two months after issuing the checks, thereby rendering the checks worthless; and (2) NATCO arguably "targeted" Shaw in Hawai'i when it reissued checks directly to Shaw's creditors (against Shaw's specific instructions) rather than giving the reissued checks to Shaw. In this regard, we hold that Shaw has sufficiently alleged a tortious breach of contract to satisfy the demands of due process.

### III. *CONCLUSION*

Shaw alleged sufficient facts to support a *prima facie* showing that NATCO committed

tortious injuries against him in Hawai'i, thus satisfying Hawai'i's long-arm statute. Under an "effects" test of jurisdiction endorsed by a number of courts since *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), Shaw's allegations of intentional torts satisfy due process. We therefore vacate the dismissal and remand for further proceedings.